**Mary KUHL; Buddy Kuhl, Jr.; Marnie K. Kuhl, Appellants,**

v.

**LINCOLN NATIONAL HEALTH PLAN OF KANSAS CITY, INC., Appellee.**

Nos. 92–2604, 92–2607.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 14, 1993.

Decided July 7, 1993.

Rehearing and Suggestion for Rehearing En Banc Denied Aug. 13, 1993.

Before WOLLMAN and BEAM, Circuit Judges, and BOGUE,* Senior District Judge.

BEAM, Circuit Judge.

This consolidated appeal arises from the district court's [1] orders resolving two actions brought against Lincoln National Health Plan of Kansas City, Inc. (Lincoln National) as a result of the death of its insured, Buddy Kuhl. The district court held that the plaintiffs' state law claims against Lincoln National were preempted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461, and that ERISA did not authorize the recovery of monetary damages for Lincoln National's alleged misconduct. We affirm both orders of the district court.

## I. BACKGROUND

Lincoln National is an "independent physician" HMO, which means that it pays independent physicians, hospitals, and other health care providers to render medical services for its members. Pursuant to a contract between Lincoln National and Belger Cartage Services, Inc. (Belger), Lincoln National pays for medical services provided to Belger employees under Belger's Group Health Plan. Belger's Group Health Plan is an "employee welfare benefit plan" regulated under ERISA. 29 U.S.C. § 1002(1). Under the Belger Plan, Lincoln National is not contractually obligated to pay for medical services rendered outside the "Service Area" of the Lincoln National network or for medical services rendered by personnel not participating in the Lincoln National network. All decisions concerning the payment of claims under the Belger Plan are the responsibility of Lincoln National. Lincoln National makes advance decisions regarding payment for medical services rendered outside of its service area through "precertification review," a process by which it determines whether a particular procedure or hospitalization is covered by the Belger Plan.

Clarence W. Crumpecker, Jr., Kansas City, MO, argued (Linda J. Salfrank and James A. Durbin, on the brief), for appellants.

Mark E. Johnson, Kansas City, MO, argued (Terry L. Tyrrell, R. Christopher Abele and William E. Hanna, on the brief), for appellee.

* The HONORABLE ANDREW W. BOGUE, Senior United States District Judge for the District of South Dakota, sitting by designation.

1. The Honorable D. Brook Bartlett, United States District Judge for the Western District of Missouri.

Buddy Kuhl was an employee of Belger, and had opted to receive medical benefits under the Belger Plan administered by Lincoln National as of March 1, 1989. On April 29, 1989, Buddy Kuhl suffered a heart attack. Dr. Grimes, Buddy Kuhl's designated primary care physician, placed Buddy Kuhl in the care of Dr. Levi, a heart specialist at Menorah Medical Center. Dr. Levi concluded that heart surgery was necessary, including open heart LV aneurysmectomy and a coronary by-pass. Lincoln National arranged for a second opinion by Dr. Ahuja. In a letter dated May 23, 1989, Dr. Ahuja confirmed that surgery was necessary, stating that Buddy Kuhl was "at high risk of sudden death" and needed the recommended surgery "in the next few weeks." App. 300–01.

Buddy Kuhl underwent extensive tests at Menorah between June 13, 1989, and June 16, 1989, to determine the extent of his heart damage and the proper course of treatment. On June 20, 1989, Dr. Levi determined that Buddy Kuhl had inducible ventricular tachycardia and would need formal electrophysiologically guided left ventricular aneurysm resection and subendocardial resection, as well as his bypass surgery. Because the Kansas City area hospitals did not have the equipment to perform the necessary surgery, Dr. Levi concluded that Buddy Kuhl would have the best chance of survival if the surgery were performed at Barnes Hospital in St. Louis, Missouri. Dr. Levi also noted that the surgeons at Barnes Hospital had more experience and success with this type of surgery than any doctor in Kansas City. Dr. Hannah, a cardiac surgeon at Menorah and a participating provider under the Belger Plan, concurred in Dr. Levi's conclusions. Therefore, arrangements were made for Dr. Cox, a heart surgeon specializing in computerized cardiac mapping and bypass surgery, to perform the surgery at Barnes Hospital on July 6, 1989.

On June 20, 1989, Dianne Long, a utilization review coordinator for Lincoln National, received a call from Barnes Hospital requesting precertification for the surgery. On June 23, 1989, Lincoln National refused to precertify payment for the surgery because Barnes Hospital is outside the Lincoln National service area. The surgery scheduled for July 6, 1989, was cancelled. Lincoln National then scheduled an appointment for Buddy Kuhl to see Dr. Brodine at Research Medical Center in Kansas City on July 6, 1989, to determine whether the surgery could be performed in Kansas City rather than in St. Louis. After examining Buddy Kuhl, Dr. Brodine immediately informed Lincoln National that he agreed with the recommendations of Dr. Levi and Dr. Hannah that the surgery should be performed at Barnes Hospital.

Two weeks later, on July 20, 1989, Lincoln National informed Buddy Kuhl that it would authorize the surgery at Barnes Hospital. Buddy Kuhl immediately attempted to schedule the surgery, but was informed that the surgery team was unavailable until September 1989. On September 2, 1989, Dr. Cox examined Buddy Kuhl in anticipation of surgery and found that his heart had deteriorated to such an extent that the proposed surgery was no longer a viable option. Dr. Cox recommended that Buddy Kuhl be evaluated for cardiac transplantation and asked that he be placed on a heart transplant waiting list at Barnes Hospital. Lincoln National refused to precertify payment of these medical costs. However, Buddy Kuhl was placed on a heart transplant waiting list at Kansas University Medical Center.

Buddy Kuhl died as a result of ventricular tachycardia on December 28, 1989, while waiting for a heart transplant.

On March 15, 1991, Mary Kuhl, Buddy Kuhl, Jr., and Marnie K. Kuhl (the Kuhls) filed a petition in the Circuit Court of Jackson County, Missouri, asserting four claims against Lincoln National: medical malpractice, emotional distress, tortious interference with Buddy Kuhl's right to contract for medical care, and breach of a contract through Buddy Kuhl as a third-party beneficiary. Lincoln National filed a Notice of Removal pursuant to 28 U.S.C. § 1441(b), asserting that ERISA provides federal question jurisdiction over each of the Kuhls' claims. The Kuhls sought remand, arguing that ERISA did not apply. Lincoln National opposed the motion to remand and filed a motion for summary judgment on the grounds of

ERISA preemption. The district court determined that the Kuhls' state law claims arise from the administration of the Belger Plan and therefore are preempted as claims that "relate to" an ERISA plan. The court also examined the possible remedies under ERISA, and concluded that the Kuhls could not state a claim under ERISA. Accordingly, the district court denied the Kuhls' motion to remand and granted summary judgment in favor of Lincoln National.

The Kuhls then moved to amend the judgment, moved to amend their complaint to include a cause of action under ERISA, and filed a second suit in the district court alleging that Lincoln National breached its fiduciary duty under ERISA. Lincoln National opposed the Kuhls' motions and filed a motion to dismiss the second complaint. The district court denied the Kuhls' motion to amend the original complaint because the action had been dismissed and the Kuhls' proffered no reason why the amendments were not made before the action was dismissed. Additionally, the court concluded that the Kuhls' state law claims could not be recharacterized as ERISA claims and thus, reaffirmed its grant of summary judgment in favor of Lincoln National. Finally, the court granted Lincoln National's motion to dismiss the second complaint on three grounds: (1) the court's grant of summary judgment in favor of Lincoln National was res judicata as to the allegations in the second complaint; (2) under the reasoning in the court's order granting summary judgment, the Kuhls could not state a cause of action under ERISA for breach of a fiduciary duty; and (3) the "other equitable relief" clause in 29 U.S.C. § 1132(a)(3)(B)(i) does not include monetary damages.

On appeal, the Kuhls argue that the district court erred in granting Lincoln National's motion for summary judgment and in denying the Kuhls' motion to remand because their state law claims are not preempted by ERISA. In the alternative, the Kuhls

contend that the district court erred in not recharacterizing their state law claims under ERISA, in denying their motion to amend the original complaint to include a cause of action under ERISA, and in dismissing their second complaint.

## II. DISCUSSION

### A. ERISA Preemption

■ ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries by regulating the creation and administration of employee benefit plans. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 44, 107 S.Ct. 1549, 1551, 95 L.Ed.2d 39 (1987). "The statute imposes participation, funding, and vesting requirements on pension plans. It also sets various uniform standards, including rules concerning reporting, disclosure, and fiduciary responsibility, for both pension and welfare plans." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 91, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983) (citations omitted). Consistent with the decision to create a comprehensive, uniform federal scheme for regulation of employee benefit plans, Congress drafted ERISA's preemption clause in broad terms. *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 137, 111 S.Ct. 478, 481, 112 L.Ed.2d 474 (1990).

Under section 514(a) of ERISA, as set forth in 29 U.S.C. § 1144(a), Congress preempted "all State laws insofar as they may now or hereafter relate to any employee benefit plan."[2] Statutory mandates, court decisions, and state law from all other sources are included in the preemption clause. 29 U.S.C. § 1144(c)(1). The question of whether a certain state law is preempted by ERISA is necessarily a question of legislative intent, and the Supreme Court has left no doubt that Congress intended the preemption clause to be construed extremely broadly. *See Ingersoll–Rand,* 498 U.S. at 138, 111 S.Ct. at 482 ("[i]ts

2. The full text provides:
> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.
29 U.S.C. § 1144(a). Section 514(b) exempts certain state laws from preemption, but none of these exemptions is applicable here.

deliberately expansive language was designed to establish pension plan regulation as exclusively a federal concern") (quotation omitted); *FMC Corp. v. Holliday*, 498 U.S. 52, 58, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990) ("[t]he preemption clause is conspicuous for its breadth").

The key to determining whether a state law is preempted is whether the state law in question "relates to" an ERISA plan. 29 U.S.C. § 1144(a). "A law [clearly] 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw*, 463 U.S. at 96–97, 103 S.Ct. at 2900. Moreover, ERISA's preemption clause is not limited to laws which relate to the specific provisions of ERISA. A state law may "relate to" an employee benefit plan, and therefore be preempted, even though the state law was not designed to affect benefit plans and its effect on such plans is only incidental. *Ingersoll–Rand*, 498 U.S. at 139, 111 S.Ct. at 483.

Despite Congress' intention that ERISA cut a wide swath of preemption through state laws, the Supreme Court has recognized that not every cause of action that might be brought against an ERISA plan is preempted. "Some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw*, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21. In *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), the Court held that ERISA did not preempt a state's general garnishment statue as applied to collect judgments against plan participants. The Court noted that although collection might burden the administration of the plan, this fact was not dispositive on the question of whether the state law "relates to" the benefit plan. *Id.* at 841, 108 S.Ct. at 2191. Thus, the Court's decisions do not provide a clear-cut method for determining whether a state law which merely has some unintended effects on ERISA-governed plans will be preempted.

### 1. Tortious Interference, Medical Malpractice, and Breach of Contract

We have no difficulty in concluding that the Kuhls' three state law claims that rely on Buddy Kuhl's status as a beneficiary of the Belger Plan are preempted by ERISA. The Kuhls' claims are all based on Lincoln National's alleged misconduct in delaying Buddy Kuhl's heart surgery in St. Louis. The Kuhls contend that Lincoln National tortiously interfered with the contractual relationship between Buddy Kuhl and his doctors, that Lincoln National committed medical malpractice because it assumed the role of Buddy Kuhl's physician by making decisions about proper medical treatment and made decisions that constitute medical malpractice, and that Lincoln National breached its contract with Belger, to which Buddy Kuhl was a third-party beneficiary, by delaying the surgery in St. Louis. The district court found that all of these state law claims arise from the administration of benefits under the Belger Plan and are therefore preempted by ERISA. We agree.

In *Pilot Life*, the Supreme Court held that ERISA preempts state common-law causes of action arising from the alleged improper processing of a claim for benefits under an ERISA-regulated plan. 481 U.S. at 57, 107 S.Ct. at 1558. In that case, the beneficiary of an ERISA-regulated plan brought state common law tort and contract claims against the insurer for failure to pay benefits under the insurance policy. The Court held that these state law claims "relate to" the employee benefit plan and thus, the comprehensive civil enforcement scheme detailed in the provisions of section 502(a) of ERISA provides the exclusive remedies for claims involving the administration of plan benefits. "The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Id.* at 54, 107 S.Ct. at 1556.

The Kuhls attempt to avoid ERISA preemption by suggesting that Lincoln National's actions with respect to Buddy Kuhl went

beyond the mere administration of benefits. They assert that Lincoln National not only refused to precertify payment for Buddy Kuhl's operation, but "cancelled" the operation and undertook treatment of Buddy Kuhl according to its own medical opinions. The Kuhls rely heavily on Lincoln National's admission for the purpose of its motion for summary judgment that it "cancelled" the surgery scheduled for July 6, 1989, in St. Louis. *See* App. at 154 n. 1. The district court rejected the Kuhls' arguments, concluding that the Kuhls' "claims are based on the manner in which Lincoln National responded to the request for 'pre-certification' of Buddy Kuhl's heart surgery. Artful pleading by characterizing Lincoln National's actions in refusing to pay for the surgery as 'cancellation' or by characterizing the same administrative decisions as 'malpractice' does not change the fact that plaintiffs' claims are based on the contention that Lincoln National improperly processed Kuhl's claim for medical benefits." *Kuhl v. Lincoln National Health Plan of Kansas City, Inc.*, No. 91–0330–CV–W–9, order at 17, 1991 WL 523899 (W.D.Mo. Dec. 26, 1991).

■ Taking the facts in the light most favorable to the Kuhls, as we must for purposes of Lincoln National's motion for summary judgment, we are compelled to agree with the district court. Lincoln National became involved in the cancellation of the St. Louis surgery only after the Barnes Hospital staff requested a precertification review. Lincoln National's admission that it "cancelled" the surgery cannot be stretched to imply that Lincoln National went beyond the administration of benefits and undertook to provide Buddy Kuhl with medical advice. Although the surgery in St. Louis was unquestionably cancelled as a result of Lincoln National's decision not to precertify payment, the decision not to precertify payment relates directly to Lincoln National's administration of benefits.

We do not imply that how the surgery was cancelled would be immaterial in every case. In a different case, the cancellation of a

beneficiary's surgery by an ERISA benefits provider may lay the basis for non-preempted state law claims. Here, however, the Kuhls have failed to allege that there was a practical difference between Lincoln National "cancelling" the surgery and simply denying precertification. The Kuhls make no allegations that Buddy Kuhl would have had the surgery even if Lincoln National refused to pay for it; that Buddy Kuhl was thwarted in his efforts to arrange other financing for the surgery upon Lincoln National's "cancellation;" or that the timing of the "cancellation" made it impossible for Buddy Kuhl to have the surgery on July 6, 1989, if payment could be otherwise arranged.[3] The July 18, 1989, letter that Buddy Kuhl wrote to Dr. Grimes requesting her assistance in persuading Lincoln National to certify payment for his surgery makes it clear that he was not under the misconception that Lincoln National had taken the place of his treating physicians. *See* App. at 258.

Under *Pilot Life*, any state law claim that Buddy Kuhl may have had against Lincoln National for its conduct in delaying the surgery scheduled for July 6, 1989, arose from Lincoln National's denial of benefits under the Belger Plan. The Kuhls' attempt to invoke *Mackey* and to characterize their claims as merely tangentially related to the Plan is unpersuasive. Accordingly, the Kuhls' state law claims through Buddy Kuhl "relate to" the Belger plan and are preempted by ERISA.

## 2. Emotional Distress

■ Mary Kuhl, Buddy Kuhl's wife, also asserts a claim for intentional infliction of emotional distress, alleging that she was aware that Lincoln National "cancelled" Buddy Kuhl's surgery; that she was present when he was informed in September 1989 that his heart could no longer withstand surgery and transplantation was his only remaining option; and that she was present when Buddy Kuhl collapsed and died while waiting for a heart to become available. Mary Kuhl relies on dicta in *Drinkwater v.*

---

**3.** The Kuhls allege that Lincoln National "cancelled" Buddy Kuhl's surgery on June 23, 1989, and did not inform him until June 27, 1989. However, they do not allege that this delay altered Buddy Kuhl's response to the "cancellation" in any way.

*Metro. Life Ins. Co.*, 846 F.2d 821, 826 (1st Cir.), *cert. denied*, 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988) for the proposition that claims for emotional distress are not preempted by ERISA. She attempts to distinguish the persuasive precedent to the contrary, *see, e.g., Johnson v. District 2 Marine Eng'rs Beneficial Ass'n*, 857 F.2d 514, 517–18 (9th Cir.1988) *and Powell v. Chesapeake and Potomac Telephone Co.*, 780 F.2d 419 (4th Cir.1985), *cert. denied*, 476 U.S. 1170, 106 S.Ct. 2892, 90 L.Ed.2d 980 (1986), on the grounds that her underlying vicarious malpractice claim is not preempted by ERISA. *See* Kuhls' Reply Brief at 12.

As we previously indicated, Mary Kuhl is mistaken in her contention that her underlying state law claim for medical malpractice is not preempted. Mary Kuhl's claim for emotional distress, like the Kuhls' other state law claims, is based upon Lincoln National's failure to expeditiously precertify payment for the St. Louis surgery. We conclude that Mary Kuhl's claim for emotional distress "relates to" Lincoln National's administration of the Belger Plan within the broad meaning of the ERISA preemption clause. Accordingly, Mary Kuhl's claim for emotional distress is also preempted under section 514(a) of ERISA.

■ We recognize the obvious salutary effect that imposing state law liability on Lincoln National might have on deterring poor precertification decisions. However, this is precisely the type of state regulation of plan administration that ERISA was designed to replace. "Section 514(a) was intended to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government." *Ingersoll–Rand*, 498 U.S. at 142, 111 S.Ct. at 484. Other courts have speculated that Congress could not have foreseen the precertification review process when it enacted a preemption

clause so broad that it relieves ERISA-regulated plans of most tort liability. *See Corcoran v. United Healthcare, Inc.*, 965 F.2d 1321, 1334 (5th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 812, 121 L.Ed.2d 684 (1992). Although this may well be true, modification of ERISA in light of questionable modern insurance practices must be the job of Congress, not the courts.

## B. ERISA Claims

The Kuhls' argue that even if their state law claims are preempted by ERISA, the district court erred by not recharacterizing their state law claims under ERISA, by denying the Kuhls' motion to amend the complaint to allege a cause of action under ERISA, and by dismissing their subsequent complaint alleging a breach of fiduciary duty under ERISA. Although the Kuhls apparently did not ask the district court to recharacterize their state law claims under ERISA, *see* App. at 830–31, the court examined the civil remedies available under section 502(a) of ERISA, 29 U.S.C. § 1132(a), and concluded that the Kuhls' factual allegations do not state a claim under ERISA. The Kuhls suggest that section 502(a)(3)(B)(i), 29 U.S.C. § 1132(a)(3)(B)(i), permits them to recover monetary damages for Lincoln National's alleged breach of its fiduciary duty.[4] They argue that we should follow the Sixth Circuit's determination that monetary damages constitute "other appropriate equitable relief." *See Warren v. Society Nat'l Bank*, 905 F.2d 975, 982 (6th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2256, 114 L.Ed.2d 709 (1991).

■ We have previously held that monetary damages are not available under section 502(a)(3)(B)(i). *Novak v. Andersen Corp.*, 962 F.2d 757, 759 (8th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2928, 124 L.Ed.2d 678 (1993). In *Novak*, we expressly rejected the *Warren* court's reasoning and held that an award of monetary damages is a legal remedy, not an equitable one. *Id.* at

4. Section 502(a) provides:
   A civil action may be brought—
   ....
   (3) by a participant, beneficiary, or fiduciary
   (A) to enjoin any act or practice which violates

any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

761. This interpretation has recently been vindicated by the Supreme Court. *Mertens v. Hewitt Assocs.*, —— U.S. ——, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993). After an extensive review of the history of equitable remedies and the statutory language of section 502(a)(3), the Court concluded that damages do not constitute "other equitable relief." *Id.* at —— – ——, 113 S.Ct. at 2068. The district court properly held that the Kuhls' claim for monetary damages was not cognizable under section 502(a)(3)(B)(i).[5]

## III. CONCLUSION

For the reasons discussed above, the orders of the district court are affirmed.

5. Our resolution of the claim for monetary damages makes it unnecessary for us to review the district court's other rationales for denying the Kuhls relief under ERISA. We note, however, that it is far from clear that the Kuhls could state a cause of action for a breach of fiduciary duty under 29 U.S.C. § 1104(a)(1) that would allow a remedy for certain injured individuals, rather than the Plan as a whole.