# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1139

_____

David Knieriem, as personal          *
representative of the Estate of      *
Troy Siade, deceased,                *
                                     *
                                     *
        Appellant,                   *
                                     *   Appeal from the United States
    v.                               *   District Court for the
                                     *   Eastern District of Missouri.
Group Health Plan, Inc.;             *
Bernard Mansheim,                    *
                                     *
        Appellees.                   *

_____

Submitted:  October 12, 2005
Filed:  January 19, 2006

_____

Before RILEY, HANSEN, and COLLOTON, Circuit Judges.

_____

RILEY, Circuit Judge.

David Knieriem (Knieriem), as personal representative of the estate of Troy Siade (Siade), appeals the order of the district court[1] dismissing his claim, because the relief sought against Siade's employer-sponsored health care plan was not available

_____

[1]The Honorable Audrey G. Fleissig, United States Magistrate Judge for the United States District Court for the Eastern District of Missouri, presiding by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

under the Employee Retirement Income Security Act of 1974 (ERISA), § 502(a)(3)(B), 29 U.S.C. § 1132(a)(3)(B). We affirm.

## I.    BACKGROUND

Siade had an employer-sponsored health care plan provided by Group Health Plan, Inc. (GHP). The plan was governed by ERISA. GHP issued the health insurance policy for the plan. In 2001, Siade was diagnosed with non-Hodgkin's lymphoma and sought GHP's pre-approval for an allogeneic stem cell transplant. GHP denied coverage on the basis the procedure was "investigational and unproven" and therefore excluded under the plan's policy.

In April 2004, following GHP's denial of coverage, Siade filed a lawsuit in Missouri state court seeking damages against GHP and Dr. Bernard Mansheim, Chief Medical Officer of Coventry Health Care, GHP's parent company (collectively, GHP). Siade alleged GHP's wrongful denial of coverage amounted to medical malpractice and intentional infliction of emotional distress under Missouri law. GHP removed the case to federal court based on ERISA preemption. The district court denied Siade's motion to remand, finding the state claims were preempted by ERISA, but granted Siade leave to file an amended complaint to plead a claim under ERISA.

In his amended complaint, Siade[2] requested a jury trial and alleged GHP breached its fiduciary duty by denying coverage. For relief, Siade requested the court "order restitution by defendants to Plaintiff; to award Plaintiff a 'surcharge' as that term was used in equity prior to the fusion of law and equity; to provide compensation to Plaintiff for defendants' breach of fiduciary duty; [and] to award attorney's fees." GHP then moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim under ERISA. The district court granted the motion, reasoning

---

[2]Siade passed away shortly after the case was removed. Knieriem was appointed personal representative of Siade's estate. The district court permitted Knieriem to be substituted as plaintiff, and allowed Knieriem to serve as both personal representative and counsel in this action.

"[w]hile Plaintiff has phrased his request as for 'restitution' and a 'surcharge for breach of a fiduciary duty,' Plaintiff is actually seeking monetary relief, and such relief is not available under ERISA."

On appeal, Knieriem argues the district court erred in dismissing the claim because ERISA allows a monetary award of restitution and a surcharge to the beneficiaries of a decedent when the plan administrator improperly fails to authorize a procedure.

## II.    DISCUSSION

We review de novo the district court's grant of a motion to dismiss pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint as true and granting every reasonable inference in favor of the nonmovant. MM&S Fin., Inc. v. Nat'l Ass'n of Sec. Dealers, Inc., 364 F.3d 908, 909 (8th Cir. 2004) (citing Stone Motor Co. v. GMC, 293 F.3d 456, 464 (8th Cir. 2002)). "A motion to dismiss should be granted only if it appears beyond doubt that the plaintiff can prove no set of facts to warrant a grant of relief." Gilmore v. County of Douglas, Neb., 406 F.3d 935, 937 (8th Cir. 2005) (citing Carter v. Arkansas, 392 F.3d 965, 968 (8th Cir. 2004)).

There is no dispute Siade did not receive the allogeneic stem cell transplant. We will assume, as we must in reviewing a dismissal for failure to state a claim, GHP breached its fiduciary duty by denying coverage for the procedure. The question before us is whether the requested relief is available under ERISA.

Knieriem does not deny the relief requested is money damages. Instead, he contends ERISA's roots in the equitable law of trusts allow for monetary damages in the present case. First, Knieriem argues, as a fiduciary, GHP held the money Siade paid for health benefits in trust. Therefore, recovery is nothing more than the restitution of the funds the fiduciary had an obligation to release. Knieriem's second argument is monetary recovery in the form of a surcharge is available as an equitable

-3-

remedy when, as here, a trustee has gained personally from wrongful action taken in managing a trust. We disagree.

## A. Restitution

As the Supreme Court has oft-iterated, "ERISA is a comprehensive and reticulated statute, the product of a decade of congressional study of the Nation's private employee benefit system." Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 209 (2002) (internal quotations omitted). The Court similarly has repeated its reluctance "'to tamper with [the] enforcement scheme' embodied in the statute by extending remedies not specifically authorized by its text." Id. (quoting Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 147 (1985)) (alteration in original). The statute's failure to include certain remedies, as the Court has noted, was not an oversight; rather, "ERISA's carefully crafted and detailed enforcement scheme provides strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly." Id. (internal quotations omitted). Vague notions that ERISA's purpose would be defeated if recovery was limited are inadequate to overcome the basic words of the statute. Mertens v. Hewitt Assocs., 508 U.S. 248, 261 (1993); Kerr v. Charles F. Vatterott & Co., 184 F.3d 938, 943 (8th Cir. 1999).

ERISA's civil enforcement provision, found in section 1132, lists six types of civil actions that may be pursued for violations of the statute. See Russell, 473 U.S. at 139-40. The present case was brought pursuant to section 1132(a)(3), which allows a civil action, "by a participant, beneficiary, or fiduciary . . . (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of . . . the terms of the plan." 29 U.S.C. § 1132(a)(3)(B). This provision allows an individual plan participant to seek equitable remedies for breach of fiduciary duty in his individual capacity. See Varity Corp. v. Howe, 516 U.S. 489, 510-13, 515 (1996) (finding section 1132(a)(3) allows individual actions for equitable relief for breaches of fiduciary duty). Recovery is limited, however, to "classic" equitable remedies, Mertens, 508 U.S. at 257-58, "such as injunctive, restitutionary, or

mandamus relief, and does not extend to compensatory damages," <u>Kerr</u>, 184 F.3d at 943.

Restitution can be equitable or compensatory, and the distinction lies in the origin of the award sought. <u>Id.</u> at 944. "Restitution seeks to punish the wrongdoer by taking his ill-gotten gains, thus, removing his incentive to perform the wrongful act again. Compensatory damages on the other hand focus on the plaintiff's losses and seek to recover in money the value of the harm done to him." <u>Id.</u> (citing 1 Dan B. Dobbs, <u>Law of Remedies</u> § 4.1(1), at 369-71 (2d ed.1993)). Therefore, despite the label attached to the remedy in the present case, we must look to the origin of the relief sought to determine whether it is equitable or compensatory.

Knieriem requests monetary relief for the harm suffered. Knieriem states in his brief, "The relief the estate seeks is the monetary benefit that GHP should have paid for the withheld procedure, including any ancillary profit either GHP or Mansheim made from the denial of the benefit." In his prayer, Knieriem asks for restitution, surcharge, and "compensation to Plaintiff for defendants' breach of fiduciary duty." Knieriem's requested relief is essentially compensatory.

The Supreme Court and this circuit precedent precludes an award of compensatory damages under section 1132(a)(3)(B). <u>See</u> <u>Mertens</u>, 508 U.S. at 258-59, cited in <u>Kuhl v. Lincoln Nat'l Health Plan of Kansas City, Inc.</u>, 999 F.2d 298, 304-05 (8th Cir. 1993). In <u>Kuhl</u>, the insurer delayed authorizing a covered surgical procedure while searching for a network hospital to perform the procedure. <u>Id.</u> at 300. By the time the insurer approved surgery, the insured's condition had deteriorated such that surgery was no longer a viable option. The insured died, and his estate filed an action against the insurer in state court alleging, *inter alia*, medical malpractice and emotional distress. <u>Id.</u> Following removal based on ERISA preemption, the court found plaintiff's state tort claims were preempted. <u>Id.</u> at 301. Pertinent to the case at bar, the court also dismissed a subsequent complaint for breach of fiduciary duty

brought pursuant to 29 U.S.C. § 1132(a)(3)(B). Id. Citing circuit and Supreme Court precedent, we said,

> We have previously held that monetary damages are not available under section [1132](a)(3)(B)(i). In Novak [v. Andersen Corp.], we . . . held that an award of monetary damages is a legal remedy, not an equitable one. This interpretation has recently been vindicated by the Supreme Court. After an extensive review of the history of equitable remedies and the statutory language of section [1132](a)(3), the Court concluded that damages do not constitute "other equitable relief."

Id. at 304-05 (citing Mertens, 508 U.S. at 258-59; Novak v. Andersen Corp., 962 F.2d 757, 759, 761 (8th Cir.1992)) (internal citations omitted). We concluded the "claim for monetary damages was not cognizable under section [1132](a)(3)(B)(i)." Id. at 305.

Knieriem argues his case is distinguishable from Kuhl, because in the present case the funds sought were held in trust, are identifiable, and should have been used to pay for the procedure. These distinctions are unavailing. The funds sought are not identifiable, or even known, because Siade never incurred the requested transplant costs. As noted supra, whether a remedy is restitutionary or compensatory is determined by the origin of the award. In Kuhl, the action for breach of fiduciary duty was brought pursuant to section 1132(a)(3)(B), and the recovery sought was a monetary award from the insurer to compensate the estate for the insurer having delayed treatment to the insured. Id. at 304. In the present case, Knieriem alleged breach of fiduciary duty pursuant to section 1132(a)(3)(B), and he sought monetary recovery from the insurer to compensate the estate for the insurer denying the requested procedure. The remedy sought in this case is premised on the same theory as the remedy sought in Kuhl.

Knieriem next argues if Siade were still alive, this action would readily be available under ERISA and, therefore, his death should not give GHP a free pass. The

crux of Knieriem's argument is GHP was unjustly enriched by denying the treatment, and the remedy is restitution of the funds to Siade's estate. Knieriem suggests the district court reached the opposite result by misapplying this court's holding in Geissal v. Moore Medical Corp., 338 F.3d 926 (8th Cir. 2003).

In Geissal, the insurer (the Moore Plan) wrongfully terminated Geissal's health insurance policy on the basis he was covered by another policy (the TWA Plan). Id. at 929. After the Moore Plan terminated coverage, the TWA Plan covered the costs of Geissal's cancer treatment, paying over $86,000 to health care providers, and reimbursing Geissal over $6,500 for out-of-pocket expenses. Id. at 929-30. Geissal incurred approximately $4,400 in non-covered medical expenses. Id. at 930. Geissal filed a lawsuit against the Moore Plan seeking compensation for past due benefits, as well as injunctive and equitable relief pursuant to section 1132(a)(1)(B). Id. at 930. Geissal died, and his wife, as representative of his estate, was substituted as plaintiff. Id. The estate had no obligation to reimburse the TWA Plan, nor did the TWA Plan assert claims against the Moore Plan. Id. Nonetheless, the estate sought to recover the amount of benefit payments paid by the TWA Plan, arguing the Moore Plan would have been obligated to pay those expenses but for its wrongful termination of coverage. Id. Geissal claimed the estate was entitled to recover those benefit payments to prevent the self-funded Moore Plan from being unjustly enriched. Id. at 930-31. The district court denied recovery under section 1132(a)(1)(B) on the basis the plan beneficiary was deceased. Id. at 931. On appeal, we found section 1132(a)(1)(B) would allow the estate to recover any money benefits due under the plan before the beneficiary died. Id. at 931 n.1. However, we concluded the language of the statute, as well as the terms of the Moore Plan, precluded the estate from recovering medical payments paid by a third party–the TWA Plan. Id. at 932. The estate had "no claim for legal restitution." Id.

Relying on Great-West Life & Annuity Insurance Co. v. Knudson, 534 U.S. at 209, Geissal argued section 1132(a)(1)(B) allowed the estate to recover the benefits paid by the TWA Plan under a legal restitution theory. Geissal, 338 F.3d at 932. We

distinguished <u>Knudson</u>, reasoning the Court had not addressed recovery for legal restitution under section 1132(a)(1)(B). Rather, in <u>Knudson</u>, the Court found legal restitution was not recoverable under section 1132(a)(3)(B) because it was not equitable relief. <u>Id.</u> We reasoned that under section 1132(a)(1)(B) the Court similarly would limit recovery "to a claim in which the plaintiff can 'show just grounds for recovering money to pay for *some benefit the defendant had received from him*.'" <u>Id.</u> (quoting <u>Knudson</u>, 534 U.S. at 213) (emphasis in original). We concluded Geissal's estate was not entitled to recover under a legal restitution theory pursuant to section 1132(a)(1)(B), because the Moore Plan was not unjustly enriched due to benefits directly bestowed by Geissal or his estate. <u>Id.</u>

Applying our precedent, it is abundantly clear Knieriem seeks a remedy simply not available under ERISA. Unlike <u>Geissal</u>, Siade never paid or incurred any covered or potentially covered expenses. Knieriem seeks monetary damages for expenses GHP would have paid, if Siade had received the transplant. Despite the use of semantics, Knieriem seeks monetary relief that does not constitute "other appropriate equitable relief" under section 1132(a)(3)(B). <u>See</u> <u>Bast v. Prudential Ins. Co. of Am.</u>, 150 F.3d 1003, 1010-11 (9th Cir. 1998) (finding the money saved by wrongfully denying experimental cancer treatment was not "other appropriate equitable relief" under section 1132(a)(3), because the money did not form the basis of a constructive trust, and was distinguishable from cases where the money taken from pension plans by fiduciaries did form the bases of constructive trusts).

### B. Surcharge

As a second basis for recovery, Knieriem argues a surcharge is available as an equitable remedy, providing monetary recovery when a trustee has gained personally from a wrongful action taken in managing a trust. Knieriem contends this court similarly awarded an insured the disgorged profits of his insurer in <u>Parke v. First Reliance Standard Life Insurance Co.</u>, 368 F.3d 999 (8th Cir. 2004). Knieriem misapplies <u>Parke</u> to the present case.

In <u>Parke</u>, plaintiff's monthly long-term disability payments were wrongfully withheld by the insurer. <u>Id.</u> at 1003. One question we addressed on appeal was whether prejudgment interest was "other appropriate equitable relief" under section 1132(a)(3)(B) in light of <u>Knudson</u>. <u>Id.</u> at 1006-07. We determined the relief sought was an "accounting for profits," a limited exception under section 1132(a)(3)(B), allowing legal relief to disgorge the profits realized by wrongfully withholding plaintiff's property. <u>Id.</u> at 1008-09 (citing <u>Knudson</u>, 534 U.S. at 214 n.2). As we explained in <u>Parke</u>,

> An accounting for profits is one of a category of traditionally restitutionary remedies in equity, and is often invoked in conjunction with a constructive trust. A constructive trust is imposed when a defendant has possession of particular funds or property that in good conscience belong to the plaintiff. *The plaintiff must specifically identify the particular funds or property in order to obtain the constructive trust; it is not enough that the defendant merely owes the plaintiff some money.*

<u>Id.</u> at 1008 (citations omitted) (emphasis added).

Siade did not receive the requested transplant and never incurred any related medical or hospital expenses, i.e., benefits payable. Consequently, GHP holds no readily identifiable funds or property belonging to Siade's estate to form the basis of a constructive trust. The accounting for profits exception in <u>Parke</u> (interest on withheld benefits payable) has no application in the present case.

## III.  CONCLUSION

Merely re-labeling the relief sought as "restitution" or "surcharge" does not alter the nature of a remedy from monetary to equitable. In the present case, Knieriem seeks money damages which are unavailable under section 1132(a)(3)(B) of ERISA. Thus, we affirm.

_____