# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3757

_____

| | | |
|---|---|---|
| James Kenneth McAuley; Terrence Frances McAuley; Matthew Redden McAuley; Aidan Paul McAuley; Kathleen Anne McAuley; Mary Frances Barzee, | * * * * * * | |
| Appellants, | * * | |
| v. | * * * | Appeal from the United States District Court for the Eastern District of Missouri. |
| Federal Insurance Company; Chubb Group of Insurance Companies; Anheuser-Busch Employees Benefits Trust; Anheuser-Busch Companies, Inc., | * * * * * * | |
| Appellees. | * | |

_____

Submitted: May 16, 2007
Filed: August 31, 2007

_____

Before BYE, BEAM, and SMITH, Circuit Judges.

_____

BEAM, Circuit Judge.

Plaintiffs-Appellants, the children of decedent Terry McAuley, appeal the district court's[1] decision dismissing their suit for failure to state a claim upon which relief may be granted. Because the motion to dismiss was converted to, but not decided as, a motion for summary judgment, we reverse and remand for further proceedings.

## I.    BACKGROUND

Terry McAuley was employed by Anheuser-Busch as their Military Sales Director. In the course of his duties, McAuley traveled to Dublin, Ireland, in the summer of 2004. He returned to the United States on a direct flight from Dublin to St. Louis, Missouri. Upon arriving in St. Louis, McAuley retired for the evening and died early the next morning.

An autopsy identified the cause of McAuley's death as an extensive and massive acute bilateral pulmonary thromboemboli caused by the development of embolisms in his leg or legs during the extended flight from Dublin to St. Louis. In layman's terms, McAuley suffered deep vein thrombosis, which is the development of blood clots in the lower legs, often associated with extended stasis during airline flights, and at least one of those clots migrated from his legs to his heart, causing his death.

During his employment with Anheuser-Busch, McAuley enrolled in the Anheuser-Busch Employees Benefits Trust ("the Plan"), which is an employee welfare benefit plan. The Plan provided McAuley with two policies of insurance against accidental death, one identified as "the Accident Policy" or "Policy A" and the other as "the Business Travel Accident Policy" or "Policy B." After McAuley's death, claims were made against both policies. The claims were denied on the basis that the

---

[1]The parties consented to have this matter adjudicated by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

death was not accidental or, in the alternative, that McAuley's death was excluded from coverage because it was caused by a "bodily malfunction." Plaintiffs appealed the decisions of denial as permitted by the policies and the Employee Retirement Income Security Act (ERISA). After defendants-appellees took no action on the appeal, plaintiffs brought this suit against defendants under ERISA. 29 U.S.C. § 1132(a)(1)(B).

The defendants subsequently filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), alleging that plaintiffs could prove no set of facts showing that an accident caused McAuley's death. The district court granted the motion, holding that the formation of clots in McAuley's legs could not be an "accident" within the meaning of the policy and that, even if it could, the development of the clots was a "bodily malfunction," thus excluding coverage.

## II.    DISCUSSION

We review de novo the district court's decision to dismiss plaintiffs' complaint. Knieriem v. Group Health Plan, Inc., 434 F.3d 1058, 1060 (8th Cir.), cert. denied, 126 S. Ct. 2969 (2006). A district court considering a motion to dismiss under Rule 12(b)(6) accepts all factual allegations in the complaint as true. E.g., Botz v. Omni Air Int'l, 286 F.3d 488, 490 (8th Cir. 2002). The motion will "succeed or fail based upon the allegations contained in the face of the complaint." Gibb v. Scott, 958 F.2d 814, 816 (8th Cir. 1992).

We have previously held that "Rule 12(b)(6) itself provides that when matters outside the pleadings are presented and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Hamm v. Rhone-Poulenc Rorer Pharm., Inc., 187 F.3d 941, 948 (8th Cir. 1999). Such "matters outside the pleadings" include both statements of counsel at oral argument raising new facts not alleged in the pleadings, id., and "'any written or oral evidence

in support of or in opposition to the pleading that provide some substantiation for and does not merely reiterate what is said in the pleadings.'" Gibb, 958 F.2d at 816 (quoting Wright & Miller, Federal Practice and Procedure § 1366).

Among other basic facts, plaintiffs' complaint alleged that McAuley was enrolled in the Plan; that the Plan included two accidental loss of life policies; that those policies covered "accidents" including, but not limited to, "unavoidable exposure to elements arising from a covered hazard;" that McAuley took a lengthy flight; that "[t]he extensive and massive acute bilateral pulmonary thromboemboli suffered by McAuley was a result of embolisms, or blood clots, that formed in his leg(s) during the extended airplane flight;" and that the resulting death was accidental in that it was a sudden and unexpected occurrence that resulted from the extended flight.

However, despite the fact that the complaint contained no mention of "stasis," and thus, of course, no reference to the unavoidability of exposure to stasis; no mention of McAuley's prior health; and no mention of the health of any other passengers on the flight, the district court, in its order granting the motion to dismiss, held that "the argument that Mr. McCauley [sic] was 'exposed' to 'stasis' [is] meaningless." The court also noted that "[n]othing prevents an airline passenger from moving around or getting up and walking during the course of a long flight."[2] The court also noted that it was likely McAuley suffered a "bodily malfunction," thus

---

[2]Even if we were to review this motion as a properly decided motion to dismiss, rather than a converted motion for summary judgment, there are reasonable inferences that could support the unavoidability of the exposure to stasis. For instance, weather related turbulence could have prevented "getting up and walking" during the flight, thus making the exposure to stasis unavoidable.

excluding coverage, because "[a]fter all, other passengers on the same flight did not develop fatal pulmonary embolisms."[3]

As explained above, the complaint did not include any reference of an exposure to stasis, or facts regarding the unavoidability of the exposure to stasis, or any reference to the health of the other passengers. Because we assume the district court did not simply fabricate these facts, the court must have been referencing argument and evidence from some source outside the four corners of the complaint. Thus, the district court's failure to exclude these matters converted the motion to dismiss into a request for summary judgment.

While the district court styled its order as one granting a motion to dismiss under Rule 12(b)(6), by considering matters outside the pleadings, the motion should have been considered under Rule 56. "The district court's failure to treat the motion[] as [a motion] for summary judgment and to provide the parties with notice and an opportunity to provide further materials requires reversal unless the failure constituted harmless error." Gibb, 958 F.2d at 816 (footnote omitted). Nothing indicates the parties anticipated that the motion would be treated as a motion for summary judgment, but even such state of awareness would "not render the error harmless if the record is insufficient to support summary judgment." Id.

Here, it appears that there was no record before the court, let alone one that would be sufficient to support summary judgment. This deficiency is understandable, given that courts are limited to the complaint when deciding a motion to dismiss. Plaintiffs requested that the administrative record be sent to the district court, but the court proceeded without it apparently believing that it owed no deference to the administrator's decision.

---

[3]We know of no case law, and the district court cites none, indicating that the injury of others is at all relevant to the inquiry of whether McAuley's body malfunctioned.

We reverse and remand the case to the district court so that it may (1) properly analyze the motion as a request for summary judgment through application of the standards articulated in Rule 56 and (2) give the parties sufficient opportunity to create an acceptable record including the papers used by the plan administrator in its consideration and denial of the claims below. Our requirement that the administrative record be included will not only assist the district court in making its summary judgment analysis, but will also allow the court to determine whether defendants' suggested bases for denial of the claims are simply *post hoc* rationalizations, as plaintiffs contend. The record may also provide medical evidence illuminating the "bodily malfunction" exclusion and assist the district court's consideration of the "exposure to the elements" extension of coverage under the policy definition.[4]

## III.  CONCLUSION

We reverse the district court's dismissal of the case and remand for the creation of a summary judgment record and a better-informed analysis of the issues presented by the parties.

---

[4]While the court's determination that "exposure to elements" is limited to "wind, cold, sun, and not sitting in an airplane seat" may be a reasonable, though extremely narrow reading of that clause, we note that "elements arising from a covered hazard" may also be open to other fair interpretations including, for instance, consideration of cabin-related risk factors such as those that cause hypobaric hypoxia, which condition may or may not lead to the formation of blood clots. See *Hypobaric hypoxia*, The Lancet, Mar. 24, 2001, vol. 357, issue 9260, at 955, available at http://www.thelancet.com.

SMITH, Circuit Judge, dissenting.

The majority correctly notes that the district court may have considered facts not set forth in the complaint, such as references to "an exposure of stasis, or facts regarding the unavoidability of the exposure to stasis, or any reference to the health of the other passengers." However, accepting only the facts set forth in the complaint, we can decide, as a matter of law, whether an "accident" occurred within the meaning of the policy language. Because a remand is unnecessary, I respectfully dissent.

As the majority notes, the appellants' complaint alleged that:

McAuley was enrolled in the Plan; that the Plan included two accidental loss of life policies; that those policies covered "accidents" including, but not limited to, "unavoidable exposure to elements arising from a covered hazard;" that McAuley took a lengthy flight; that "[t]he extensive and massive acute bilateral pulmonary thromboemboli suffered by McAuley was a result of embolisms, or blood clots, that formed in his leg(s) during the extended airplane flight;" and that the resulting death was accidental in that it was a sudden and unexpected occurrence that resulted from the extended flight.

The complaint also set forth the relevant policy language:

30.    The Accident Policy provides the following regarding coverage:

We will pay the applicable Benefit Amount if an accident results in a Loss not otherwise excluded. The accident must result from a covered Hazard and occur during the policy period. The Loss must occur within one (1) year of the accident.

\*    \*    \*    \*    \*

40.    The Business Travel Policy provides the following regarding coverage:

-7-

> We will pay the applicable Benefit Amount if an accident results in a Loss not otherwise excluded. The accident must result from a covered Hazard and occur during the policy period. The Loss must occur within one (1) year of the accident.

No other facts are necessary to resolve this case. Whether the blood clots that formed in McAuley's legs during the flight were an "accident" within the terms of the policy is a question of law. The manner in which McAuley died is not in dispute. What is in dispute is whether that death is an "accident" under the law. According to the appellants, the district court erroneously rejected the application of the First Circuit's *Wickman* test, *Wickman v. Northwestern National Insurance Co.*, 908 F.2d 1077 (1st Cir. 1990), and relied on the "plain terms of the policy." The appellants note that the policies provide no definition of "accident" and assert that the *Wickman* test has become federal common law under ERISA for determining whether a death as a result of the decedent's voluntary conduct is an "accident." The appellants assert that McAuley's death was an "accident" under the *Wickman* test because McAuley did not subjectively believe that his conduct was highly likely to result in death and this belief was objectively reasonable.

In response, the appellees argue that the district court correctly ruled that an "accident" is an unexpected or unusual event or happening that is external to the insured. They contend that the appellants' argument that the Accidental Death Policies did not require that McAuley's death have been "caused by" an accident ignores the plain terms of the policies and relies on inapplicable case law.

Because we review de novo the district court's decision to dismiss a complaint, *Knieriem v. Group Health Plan, Inc.*, 434 F.3d 1058, 1060 (8th Cir. 2006), and because "[t]he interpretation of an insurance policy and construction of the terms of an insurance contract are questions of law subject to de novo review on appeal," *Day*

*v. Toman*, 266 F.3d 831, 835 (8th Cir. 2001), I would resolve this case on its merits and not remand the case to the district court.[5]

_____

<hr/>

[5]I also note that the appellants never made a motion for reconsideration, after the district court granted the motion to dismiss, arguing that the district court erroneously converted the motion to dismiss into a motion for summary judgment. Furthermore, the appellants did not raise this argument on appeal. The only argument that the appellants raise with regard to the pleadings on appeal is the claim that the district court erroneously dismissed the claims with prejudice based upon the appellees' post hoc rationales for denying coverage and without the administrative record before it. They argue that, under ERISA, the district court's role is to review the administrator's benefits decision; in doing so, the administrator's post hoc rationales are not to be considered. Thus, they assert that the district court could not identify these post hoc rationales because it did not have the administrative record before it. Instead, it relied on the fact that it was reviewing the decision de novo and that these arguments were raised in response to their arguments. This argument is separate and distinct from an argument that the district court treated the motion to dismiss as a motion for summary judgment.