# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3056

_____

Gerard J. Keating, individually and on    *
behalf of all persons similarly situated;    *
Janet A. Keating, individually and on    *
behalf of all persons similarly situated,    *
   *
       Plaintiffs-Appellants,    *
   *
Frank R. Krejci, individually and on    *
behalf of all persons similarly situated;    *
Jane Krejci, individually and on    *
behalf of all persons similarly situated;    *
Timothy Peterson, individually and on    *
behalf of all persons similarly situated;    *
Linda Peterson, individually and on    *
behalf of all persons similarly situated,    *
   *
       Plaintiffs,    *
   *
Daryl Butterfield, individually and on    *
behalf of all persons similarly situated;    *
Makala Butterfield, individually and on    *
behalf of all persons similarly situated,    *
   *   Appeal from the United States
       Plaintiff-Appellants,    *   District Court for the
   *   District of Nebraska.
       v.    *
   *
Nebraska Public Power District,    *
in Their Official Capacities;    *
Nebraska Department of Natural    *
Resources, in Their Official Capacities;    *
Dennis L. Rasmussen, in Their Official    *

Capacities; Mary A. Harding, in Their *
Official Capacities; Ronald W. Larsen, *
in Their Official Capacities; Larry A. *
Linstrom, in Their Official Capacities; *
Darrell J. Nelson, in Their Official *
Capacities; Edward J. Schrock, in Their *
Official Capacities; Ken L. Schmieding, *
in Their Official Capacities; Gary G. *
Thompson, in Their Official Capacities; *
Larry G. Kuncl, in Their Official *
Capacities; Virgil L. Froehlich, in Their *
Official Capacities; Wayne E. Boyd, in *
Their Official Capacities; Ann Saloman *
Bleed, in Their Official Capacities; *
Does, 1-100, *
                                                    *
         Defendants-Appellees.        *

_____

Submitted: March 13, 2008
Filed: April 13, 2009

_____

Before RILEY, GRUENDER, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Appellants, Nebraska farmers and ranchers who draw water from the Niobrara Watershed, appeal the district court's dismissal of their suit brought under 42 U.S.C. § 1983. In this suit, appellants alleged that state officials deprived them of their procedural due process rights when those officials ordered them to cease drawing water from the Niobrara Watershed without providing prior notice or a hearing. For the reasons set forth below, we reverse the district court's dismissal and remand this matter for further consideration.

I.

Since 1895, Nebraska has operated a water appropriation system to manage surface water rights in the state. The Nebraska Department of Natural Resources, which is lead by Director Ann Bleed[1] (collectively, "DNR"), is the agency responsible for administering this system. The Nebraska Public Power District ("NPPD") is a political subdivision that owns and operates the Spencer Dam on the Niobrara River. The Spencer Dam is a hydroelectric dam that produces electricity and grosses approximately $700,000 annually.

The NPPD owns three surface water appropriation permits. Permit A-359 is dated September 12, 1896, and was originally issued for Minnechaduze Creek but was transferred to the Spencer Dam in 1996. It permits the use of 35 cubic feet of water per second. Permit A-1725 was approved in 1925 prior to the 1927 construction of the first Spencer Dam, which was later destroyed by ice in 1935 and reconstructed around 1940. It permits the use of 1450 cubic feet of water per second. The third permit, A-3574, was approved on June 8, 1942, and allows for the use of 550 cubic feet of water per second from the Niobrara River. Both the A-1725 and A-3574 permits state that the grants are made subject to Nebraska irrigation laws which give preference to water appropriators who use the water for domestic and agricultural uses over those who use the water for manufacturing and power purposes.

Under Nebraska statutory law, "[a]s between [surface water] appropriators, the one first in time is first in right." Neb. Rev. Stat. § 46-203. However,

> [p]riority of appropriation shall give the better right as between those using the water for the same purposes, but when the waters of any natural stream are not sufficient for the use of all those desiring the use of the same, those using the water for domestic purposes shall have the

---

[1]We note that the current director of the DNR is Brian Dunnigan.

preference over those claiming it for any other purpose, and those using the water for agricultural purposes shall have the preference over those using the same for manufacturing purposes.

Id. § 46-204.

The appellants also own surface water appropriation permits: A-14604, with a priority date of December 22, 1976, and A-16012, with a priority date of October 26, 1981. These permits are used to pump water from a tributary of the Niobrara River for farming and ranching purposes. Both permits contain a statement that the there may be times when the supply of water is insufficient to meet all of the appropriations and that the applicants are "hereby given notice that [they] may be denied the use of water during times of scarcity." These permits also contain a clause referencing Nebraska law[2] and stating "that waters previously appropriated for power purposes may be taken and appropriated for irrigation purposes, upon due and fair compensation therefor; and inversely they cannot be appropriated arbitrarily for irrigation purposes without just compensation."

---

[2] "In applying the provisions of law relating to the appropriation of water, priority of appropriation shall give the better right as between those using the water for the same purpose, but when the waters of any natural stream are not sufficient for the use of all those desiring to use the same, those using the water for domestic purposes shall have preference over those claiming it for any other purpose. Those using the water for agricultural purposes shall have the preference over those using the same for manufacturing purposes, and those using the water for agricultural purposes shall have the preference over those using the same for power purposes, where turbine or impulse water wheels are installed." Neb. Rev. Stat. § 70-668.

"No inferior right to the use of the waters of this state shall be acquired by a superior right without just compensation therefor to the inferior user. The just compensation paid to those using water for power purposes shall not be greater than the cost of replacing the power which would be generated in the plant or plants of the power user by the water so acquired." Neb. Rev. Stat. § 70-669.

-4-

In the fall of 2006, the NPPD filed a complaint with the DNR contending that surface water levels in the Niobrara Watershed were insufficient to enable the NPPD to operate Spencer Dam. No notice of this complaint was given to the farmers and ranchers in the area. On May 1, 2007, the DNR issued Closing Notices to hundreds of farmers and ranchers ordering them to immediately stop irrigation and threatening criminal penalties in the event of a violation. Within a week, the notices were rescinded, but the Opening Notices warned that "[f]uture closing orders may be necessary in the future for the benefit of senior permits."

On May 10, 2007, appellants and two other families filed suit asserting claims for damages and injunctive relief for violations of due process rights under 42 U.S.C. § 1983. They also sought a declaratory judgment that the nature of the Closing Notices were ultra vires of the DNR and the DNR Director's authority under Nebraska law. Appellants later amended their complaint to remove the damages claims.

The district court granted appellees' motion to dismiss, holding that the dispute as to the due process claim was not ripe because (1) there were no Closing Notices in effect at the time and (2) appellants had failed to exhaust their administrative remedies prior to filing the complaint. The district court noted that there are two processes of which appellants could have availed themselves. Appellants could have filed a request for a hearing within 15 days after the Closing Notices were issued, or prior to the issuance of the Closing Notices, appellants could have sought a declaratory order under the administrative procedures provided by the DNR. Because appellants did neither, the district court determined that it lacked jurisdiction to hear the due process claim. The district court declined to retain jurisdiction over the state-law ultra vires claim and dismissed that claim without prejudice. On the date the district court dismissed the complaint, the Closing Notices were reinstated. This appeal follows.

The appellants argue that due process requires that they be given notice and a predeprivation opportunity to be heard before the DNR may issue Closing Notices.

Appellants also contend that the district court erred in determining the dispute was not ripe and administrative remedies had not been exhausted. Appellants request that we reverse the order of dismissal and remand this matter to the district court with directions that they be given notice and a predeprivation hearing before the DNR may issue future Closing Notices.

II.

We review a grant of a motion to dismiss de novo. McAuley v. Fed. Ins. Co., 500 F.3d 784, 787 (8th Cir. 2007). As did the district court, we accept the factual allegations of the complaint as true. Id.

First, we address the district court's holding that the claim is not ripe because the Closing Notices that had been issued on May 1, 2007, had been lifted by the time the complaint was filed and there were no Closing Notices in effect at that time. At best, this would raise a question of mootness, not ripeness. "A case that no longer presents a live case or controversy is moot, and a federal court lacks jurisdiction to hear the action." Minn. Humane Soc'y v. Clark, 184 F.3d 795, 797 (8th Cir. 1999). We hold, however, that this claim would fall under the "capable-of-repetition-yet-evading-review" exception to the mootness bar. This exception "applies only in exceptional situations, where the following two circumstances [are] simultaneously present: (1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again[.]" Spencer v. Kemna, 523 U.S. 1, 17 (1998) (quotation and citation omitted). The initial Closing Notice was only in effect for one week, and additional Closing Notices were issued and threatened following the lifting of the May 1 Closing Notices. In fact, Closing Notices were reissued to the appellants on the day the district court issued its order of dismissal. Accordingly, the fact that there were no Closing Notices in effect at the time the complaint was filed does not render this action moot.

Underlying the ruling on ripeness is the district court's finding that the appellants' claim was barred because they failed to exhaust administrative remedies that were available to them. See Neb. Rev. Stat. § 61-206(1) (Cum. Supp. 2006) ("If a final decision is made without a hearing, a hearing shall be held at the request of any party to the proceeding if the request is made within 15 days after the decision is rendered.").[3] Specifically, the district court determined the appellants could have requested a hearing within 15 days after the Closing Notices were issued or availed themselves of the administrative procedure of seeking a declaratory order from the DNR prior to the issuance of the Closing Notices. On appeal, appellants contend that they are not required to exhaust any administrative remedy prior to bringing their action under 42 U.S.C. § 1983. See Patsy v. Bd. of Regents, 457 U.S. 496, 516 (1982) ("[W]e conclude that exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983.").

In order to establish a procedural due process violation, a plaintiff must prove that he or she was deprived of "an opportunity . . . granted at a meaningful time and in a meaningful manner for [a] hearing appropriate to the nature of the case." Boddie v. Connecticut, 401 U.S. 371, 378 (1971) (quotation and citation omitted). Generally, where "deprivations of property [are] authorized by an established state procedure . . . due process [is] held to require predeprivation notice and hearing in order to serve as a check on the possibility that a wrongful deprivation would occur." Parratt v. Taylor, 451 U.S. 527, 538 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327, 330-31 (1986); see also Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950) ("Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of . . . property . . . be preceded by notice and opportunity for hearing appropriate to the nature of the case.").

_____

[3]Nebraska Revised Statute section 61-206(1) was amended in 2008 to expand the time for filing the request to 30 days.

"Due process is a flexible concept, however, and calls only for such procedural protection as the particular situation demands." Moore v. Warwick Pub. Sch. Dist. No. 29, 794 F.2d 322, 327 (8th Cir. 1986). As the Supreme Court explained in Mathews v. Eldridge, 424 U.S. 319 (1976):

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Id. at 335. Under the Mathews framework, the Supreme Court has recognized two notable exceptions to the general rule that predeprivation notice and hearing are required. The first exception applies where there is a need for "quick action by the State when there is a compelling or overriding state interest in a summary adjudication." Moore, 794 F.2d at 327; see also Mackey v. Montrym, 443 U.S. 1 (1979) (upholding statute mandating prehearing suspension of a driver's license for refusing to take a breath analysis test upon arrest for operating a motor vehicle while under the influence of alcohol); Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 19 (1978) ("[W]here the potential length or severity of the deprivation does not indicate a likelihood of serious loss and where the procedures . . . are sufficiently reliable to minimize the risk of erroneous determination," a prior hearing may not be required.); N. Am. Cold Storage Co. v. City of Chicago, 211 U.S. 306 (1908) (upholding a State's right to seize and destroy contaminated food without a prior hearing). The second exception applies where the deprivation results from a "random and unauthorized" act by a state actor. See Parratt, 451 U.S. at 541 (holding that it would be "not only impracticable, but impossible" for State to provide predeprivation procedures where prisoner's property is taken through "random and unauthorized act"

of prison employee).  The record is unclear as to whether either exception applies in this case.

We have recognized an exception to Patsy's general rule that exhaustion of state remedies prior to bringing a section 1983 claim is not required.  "Under federal law, a litigant asserting a deprivation of *procedural due process* must exhaust state remedies before such an allegation states a claim under § 1983."  Wax'n Works v. City of St. Paul, 213 F.3d 1016, 1019 (8th Cir. 2000) (emphasis added).[4]  However, it is not necessary for a litigant to have exhausted available *postdeprivation* remedies when the litigant contends that he was entitled to *predeprivation* process.  See Zinermon v. Burch, 494 U.S. 113, 132 (1990) ("In situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking."); Westborough Mall, Inc. v. City of Cape Girardeau, 794 F.2d 330, 337 (8th Cir. 1986) (concluding that "[t]he availability of post-deprivation remedies is not a defense to the denial of procedural due process where predeprivation process is practicable" and district court erred in instructing jury otherwise).  Accordingly, appellants' failure to exhaust postdeprivation remedies does not affect their entitlement to predeprivation process, and the district court should not have considered this failure in dismissing the claim.

The district court also determined that appellants could have sought a declaratory order from the DNR prior to the issuance of the Closing Notices.  Under the Nebraska Administrative Code, "[a]ny person may petition the [DNR] for issuance

---

[4]In Wax'n Works, the plaintiff sought only postdeprivation relief in the form of relocation expenses after moving to another location in response to an exercise of eminent domain by the city of St. Paul, Minnesota.  213 F.3d at 1018.  The city did not respond in what Wax'n Works believed was a timely manner, so it brought a claim alleging, in part, that the failure of the city to respond constituted a deprivation of property without due process of law.  Id.

of a declaratory order as to the applicability to specified circumstances of a statute, rule, regulation, or order which is within the primary jurisdiction of the agency." 454 Neb. Admin. Code § 6-003.02. Within 30 days after the petition is filed, the DNR must either (1) "[i]ssue an order declaring the applicability of the statute, regulation, rule, or order in question to the specified circumstances;" (2) "[a]gree to issue an order by a specified time . . . ;" (3) "[s]et the matter for specified proceedings," including the possibility of setting a hearing; or (4) "[d]ecline to issue a declaratory ruling, stating the reasons for the agency's decision." Id. § 6-005.02. The procedures also provide that an appeal of a declaratory order may be taken to the Nebraska Court of Appeals as though the order came from a Nebraska District Court. Id. § 6-010.01.

It is unclear on the record before us if this predeprivation declaratory order process is constitutionally adequate to protect the property rights of the appellants. See Zinermon, 494 U.S. at 126 ("[T]o determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate."). Nothing in the record demonstrates that the declaratory judgment procedure would have addressed the specific issues raised in the underlying claim or that it would have provided a meaningful predeprivation opportunity for the appellants to present their claim. In fact, the essence of appellants' action is that the State of Nebraska does not afford constitutionally adequate predeprivation process in this circumstance.

Thus, we reverse the district court's dismissal of appellants' complaint and remand this matter to the district court. On remand, the district court must determine if a deprivation of a property right has occurred,[5] and if so, whether that right is subject to an exception to the general rule that a predeprivation process is required. If the court should find that predeprivation process is required, then it must consider

---

[5]See generally Spear T. Ranch, Inc. v. Neb. Dep't of Nat. Res., 699 N.W.2d 379, 386 (Neb. 2005) and Spear T Ranch v. Knaub, 691 N.W.2d 116, 127 (Neb. 2005).

whether the DNR's declaratory order procedures are constitutionally adequate.  After addressing these issues, the district court should proceed, if necessary, with the case. In light of this result, we reinstate the pendent state-law ultra vires claim.

## III.

Accordingly, we reverse and remand the district court's dismissal.  We deny appellants' pending motions to supplement the record.

_____