# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-3887

_____

Essie G. Foster, individually, and as majority shareholder in a closely held corporation, Y. I. W. Inc. Home Healthcare, Inc.; Ralph Foster, individually and as a major shareholder of a closely held corporation, Y.I.W. Inc. Home Healthcare, Inc.; Y.I.W. Home Healthcare, Inc., a Missouri Corporation

*Plaintiffs - Appellants*

v.

Missouri Department of Health and Senior Services, a Missouri State Agency; Debbie Hanson, individually and in her representative capacity as a Supervisor of the Employee Disqualification Unit of *Defendant* Missouri Department of Health and Senior Services; Patricia M. Watkins, individually and in her representative capacity as Investigator/Counsel for Employee Disqualification Unit of *Defendant* Missouri Department of Health and Senior Services; Missouri Department of Social Services Missouri Health Net Division, Formerly doing business as Division of Medical Services, a Missouri State agency

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 25, 2013
Filed: November 13, 2013

_____

Before MURPHY, MELLOY, and SHEPHERD, Circuit Judges.

_____

MURPHY, Circuit Judge.

Essie Foster, her husband, and their jointly owned company brought this action under 42 U.S.C. § 1983 against Debbie Hansen and Patricia Watkins, two employees of the Missouri Department of Senior and Health Services, alleging violations of their due process rights. The district court[1] granted summary judgment to Hansen and Watkins on the basis of qualified immunity, and the Fosters appeal. We affirm.

I.

Essie Foster and her husband Ralph Foster own Y.I.W. Home Healthcare Services, Inc., a company which provides home health care services to Medicaid recipients for the Missouri Department of Health and Senior Services. While Foster was an employee of the company, the Department notified her that a patient had filed a credible complaint of financial exploitation against her and that it had begun proceedings to place her on a list it maintains of persons disqualified from working for a variety of state agencies and private home health care entities.

Foster filed an administrative appeal of the listing proceedings, which she later abandoned after entering into a settlement agreement with Hansen, the director of the unit in charge of maintaining the disqualification list, and Watkins, the unit's counsel. They agreed to stay her placement on the list as long as she took certain actions. These included making monthly payments to the complaining patient's daughter and completing the Department's training program for home health care providers. The agreement stated that Foster's failure to "abide by the terms of this agreement," would result in her "immediate" placement on the disqualification list "without further hearing or appeal."

---

[1] The Honorable Rodney W. Sippel, United States District Judge for the Eastern District of Missouri.

Although Foster made payments, she made them late, to the wrong person, and in amounts that were fractionally too large. Department attorney Watkins sent Foster three letters notifying her of her failure to comply with the agreement. Foster did not respond, and Watkins sent a fourth letter requiring Foster to comply before a given deadline or be placed on the disqualification list. Foster wrote to Hansen and Watkins protesting that she had "substantially performed" the agreement and asking them to reopen her appeal of the listing proceedings. Hansen and Watkins did not respond to her letter, but instead instructed a Department employee to call the Y.I.W. Home Healthcare office and notify Foster that she was being placed on the list. The same employee told a person working for Y.I.W. Home Healthcare that Foster was being placed on the list and then, after being transferred to Foster, told Foster directly that the Department would contact her. The parties dispute whether anyone in the Department attempted to contact Foster again. Hansen did place Foster's name on the list, and she later testified that the unit's practice at the time was to notify individuals orally of their placement and to ask their employers to confirm in writing that the disqualified employees had been terminated.

At the time of Foster's placement on the disqualification list, Y.I.W. Home Healthcare was applying to renew its service provider agreement with the Department. Missouri law prohibits the Department from granting provider contracts to companies employing individuals on the disqualification list. Hansen and Watkins notified HealthNet, the unit in charge of reviewing provider applications, when Foster's name was listed. Although Foster had retired from her employee position at Y.I.W. Home Healthcare before her listing, she remained one of its owners. Department and HealthNet agents were aware of her retirement, but they denied the company's renewal application because Foster continued to be named as a company director.

In late 2010, the Fosters and Y.I.W. Home Healthcare brought this action under 42 U.S.C. § 1983 against the Department, HealthNet, and Hansen and Watkins in

their official and individual capacities. They alleged the Department failed to provide Essie Foster with actual notice of her placement on the disqualification list and thus deprived the Fosters and their company of due process. They also alleged state claims of tortious interference with contract expectancy, malicious prosecution, and abuse of process. The Department, HealthNet, and Hansen and Watkins moved for summary judgment.

In August 2012 the district court granted their motion in part, dismissing the federal claims against the Department, HealthNet, and Hansen and Watkins in their official capacities. The court decided that the claims were either barred by the Eleventh Amendment or by Missouri's sovereign immunity statute. In November 2012 the district court granted a second motion for summary judgment, dismissing the Fosters' individual capacity claim against Hansen and Watkins on the basis of qualified immunity and declining to exercise supplemental jurisdiction over the state law claims.

The Fosters appeal only the district court's grant of summary judgment to Hansen and Watkins on their individual capacity claims, arguing that the two were collaterally estopped from asserting qualified immunity and that there were deficiencies in the notice that the Fosters received before Essie was placed on the list. As a preliminary matter, we reject the Fosters' collateral estoppel claim. This court ordinarily "will not consider arguments raised for the first time on appeal." Wiser v. Wayne Farms, 411 F.3d 923, 926 (8th Cir. 2005) (citations omitted) (internal quotation marks omitted). The Fosters did not raise collateral estoppel before the district court, and we decline to consider it now.

This court reviews a grant of summary judgment de novo. Argenyi v. Creighton Univ., 703 F.3d 441, 446 (8th Cir. 2013). Facts must be construed favorably for the losing party, and the Fosters are to be given the benefit of all reasonable inferences in the record. Id. Summary judgment is appropriate only if

there is no genuine dispute "as to any material fact and the movant is entitled to judgment as a matter of law." Id. When reviewing a grant of summary judgment on qualified immunity grounds, we determine, "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." Winslow v. Smith, 696 F.3d 716, 731 (8th Cir. 2012). To be "clearly established," the "contours of the right [must be] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 738. Although officials' specific actions need "not previously have been held unlawful," a "general constitutional rule already identified in the decisional law" must apply to the "specific conduct in question." Id. The court "may decide which determination to make first." Pearson v. Callahan, 555 U.S. 223, 235–36 (2009).

The Fosters argue that their procedural and substantive due process rights were violated when Hansen and Watkins placed Essie on the disqualification list without providing her final oral notice or requesting written confirmation from Y.I.W. Home Healthcare's that it had terminated her. They allege that Essie's placement on the list deprived them of her protected interest in employment and their company's interest in a renewal of its provider contract with the Department. The Fourteenth Amendment provides that "[n]o State . . . shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1. Due process has both a procedural and substantive component. Schmidt v. Des Moines Pub. Sch., 655 F.3d 811, 816–17 (8th Cir. 2011).

We first address the Fosters' claim that their procedural due process rights were violated. Procedural due process entitles a person to "predeprivation notice and hearing" where "deprivations of property are authorized by an established state procedure." Keating v. Neb. Pub. Power Dist., 562 F.3d 923, 928 (8th Cir. 2009) (emphasis added). The notice requirement of due process is satisfied by actual notice, Hroch v. City of Omaha, 4 F.3d 693, 696 (8th Cir. 1993), and the hearing requirement

is met by providing an opportunity for a hearing at a meaningful time and in a meaningful manner. Keating, 562 F.3d at 928.

The record indicates that Hansen and Watkins provided Essie Foster with actual notice of her placement on the list. Their original letter notified her that the patient complaint had triggered listing proceedings against her. The settlement agreement stated that Essie would be immediately listed without further hearing or appeal if she violated its terms. After Essie failed to perform the agreement's required actions, Watkins sent her three letters warning her that she was in breach. When Essie did not respond, Watkins sent a fourth letter stating that she had breached the settlement agreement and notifying her that her name would be listed unless she cured the breach by a specific date. The deadline passed, and a unit employee called Y.I.W. Home Healthcare's office and told the employee who answered that Essie's name was being listed. Essie also had an opportunity to be heard in a meaningful time and manner because she exercised her statutory right to appeal the listing proceedings that Hansen and Watkins had initiated. She nevertheless chose to abandon her appeal and enter into a settlement agreement which would have kept her name permanently off the disqualification list had she complied with it.

The Fosters also provide no evidence that the failure to give Essie additional notice and request written confirmation of her termination violated their substantive due process rights. Substantive due process violations occur where there are "violations of personal rights so severe, so disproportionate to the need presented, and so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to brutal and inhumane abuse of power." Winslow, 696 F.3d at 736. There is no evidence in this record that Hansen and Watkins were inspired by "malice" or "sadism," or that their failure to provide the Fosters extra notice "amounted to a brutal and inhumane abuse of power." Id.

-6-

We can find no authority or "general constitutional rule," see id. at 731, requiring Hansen and Watkins to provide Foster final oral notice or request written confirmation of her termination in addition to the notice and opportunity for hearing they had already provided. We conclude that placing Essie Foster on the disqualification list in these circumstances was not a deprivation of the Fosters' clearly established due process rights and that Hansen and Watkins are thus entitled to qualified immunity on the Fosters' individual capacity claims against them.

The Fosters also argue that the Department violated their due process rights by denying its renewal of Y.I.W. Home Healthcare's provider agreement because of Essie's disqualification and her continued involvement with the company. This claim against Hansen and Watkins is without merit because the decision to deny the company's application was not made by them, but by other agents of the Department.

II.

Because Hansen and Watkins were entitled to qualified immunity on the § 1983 claims brought by the Fosters, we affirm the judgment of the district court.

_____