# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-3299

_____

Elvin Redmond

*Plaintiff - Appellant*

v.

Joel Kosinski, M.D.; Jana Hacker, NP; Robert Johnson, Warden, Fort Dodge;
James McKinney, Warden; Greg Ort, Deputy Warden; Michael Willey, M.D.;
Kimberly Leman, M.D.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: January 14, 2021
Filed: June 7, 2021

_____

Before LOKEN, GRASZ, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

Elvin Redmond, an Iowa Department of Corrections inmate, says that the defendants delayed treatment for a sore on his right foot, allowing it to become a major medical crisis resulting in a below-the-knee amputation. Redmond filed a claim under 42 U.S.C. § 1983, alleging that the defendants violated his Eighth

Amendment rights by acting with deliberate indifference to his serious medical needs and safety. The district court[1] granted summary judgment to all defendants and we affirm.

I.

Redmond first reported that the fifth toe of his right foot was painful and swollen on March 27, 2017. Redmond has diabetes and hepatitis, serious medical conditions requiring ongoing management. Jana Hacker, a nurse practitioner at the Fort Dodge Correctional Facility, examined his foot, prescribed pain medication, and scheduled a follow-up visit two days later. When she later saw a blister had formed, Hacker prescribed an antibiotic injection, a daily oral antibiotic, and a twice-a-day topical cream. After Redmond's blister opened and he ran a temperature, Hacker sent him to the University of Iowa Hospitals and Clinics emergency room on March 31. UIHC staff evaluated the infection, x-rayed his foot, and sent him back to the prison that same day with an order for an oral antibiotic, which an IDOC physician substituted with a different antibiotic. Hacker saw Redmond on two follow-up visits and, on April 7, when she saw that the wound was larger and the flesh around the wound was changing color, she sent him back to UIHC's emergency room and he was hospitalized.

UIHC orthopedic surgeon Michael Willey examined Redmond's foot on April 8, ordered tests, recommended a vascular consultation, and noted that "[a]s he is hemodynamically stable there is no need for urgent operative intervention at this point." On April 11, UIHC discharged Redmond to the Iowa Medical and Classification Center, a medical correction facility. Joel Kosinski, a physician at IMCC, saw Redmond multiple times in April and May, evaluated the infection, ordered his wound care and disease management treatments, prescribed medications,

---

[1]The Honorable Stephanie M. Rose, United States District Judge for the Southern District of Iowa.

and documented that Redmond needed a toe amputation. After Redmond filed an April 29 grievance saying that he had been forced to miss UIHC medical appointments, he was taken to the UIHC Orthopedic Department where staff placed a cast on Redmond's foot. His follow-up appointment with the orthopedic department was also delayed, and Redmond filed another grievance. On May 18, Willey evaluated Redmond's foot and noted that he planned a possible toe amputation after a vascular consult.

Redmond's condition worsened, and he was hospitalized again at UIHC on May 26. The infection had spread to Redmond's fourth toe, and Willey removed the two toes on May 30. During surgery, Willey found that the infection had extended beyond the toes and that the best treatment would be a below-the-knee amputation. The surgery did not take place two days later as scheduled because Redmond developed an acute kidney infection. He remained hospitalized at UIHC until June 15, and then returned to IMCC. Redmond's renal condition improved and UIHC scheduled him for surgery July 13. Against medical advice, Redmond refused the surgery so he could call his family during a family reunion. The hospital rescheduled surgery for August 8 and Willey amputated Redmond's leg below the knee. Redmond's recovery required significant follow-up and an additional surgery.

Redmond filed a *pro se* § 1983 complaint and the district court granted his request for counsel. He then filed an amended and substituted complaint claiming that seven defendants violated his Eighth Amendment rights by showing deliberate indifference to his serious medical needs and safety. He sought damages from doctors Kosinski and Willey, nurse practitioner Jana Hacker, physician's assistant Kimberly Leman, and prison officials Robert Johnson, James McKinney, and Greg Ort.

The district court granted summary judgment to Warden Johnson, Warden McKinney, Deputy Warden Ort, and physician's assistant Leman. Redmond does not

appeal that part of the district court's decision, but rather appeals the grant of summary judgment to UIHC orthopedic surgeon Dr. Willey and nurse practitioner Hacker and Dr. Kosinski, both from IDOC.

## II.

We review the district court's summary judgment decision *de novo*, "viewing the evidence most favorably to the nonmoving party." *Johnson v. Leonard*, 929 F.3d 569, 574 (8th Cir. 2019). "[W]e will affirm the grant of summary judgment 'if the record indicates that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Jackson v. Riebold*, 815 F.3d 1114, 1119 (8th Cir. 2016) (citation omitted). "If there is a dispute, and a reasonable jury could return a verdict for either party, then summary judgment is not appropriate." *Jones v. Minn. Dep't of Corr.*, 512 F.3d 478, 482 (8th Cir. 2008).

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (cleaned up) (citation omitted). The plaintiff must show (1) "an objectively serious medical need," and (2) "that the defendant knew of and disregarded that need." *Coleman v. Rahija,* 114 F.3d 778, 784 (8th Cir. 1997). "As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997).

Negligence is not enough. *See Estelle*, 429 U.S. at 106. To survive summary judgment, Redmond must show grossly incompetent or inadequate care "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Dulany*, 132 F.3d at 1242 (citation omitted). But "medical treatment may so deviate from the applicable standard of care as to evidence a physician's deliberate

-4-

indifference." *Moore v. Duffy*, 255 F.3d 543, 545 (8th Cir. 2001). "Often whether such a significant departure from professional standards occurred is a factual question requiring expert opinion to resolve." *Id.* This inquiry is factually intensive and presents a "substantial evidentiary threshold" to show that medical providers "deliberately disregarded the inmate's needs by administering an inadequate treatment." *McRaven v. Sanders*, 577 F.3d 974, 982 (8th Cir. 2009) (citation omitted).

Redmond does not clear this threshold. He presented no medical evidence that Hacker's actions did not meet a nurse practitioner's standard of care or that her alleged four-day delay in transferring him back to the hospital caused his wound to deteriorate. *See Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997) (affirming summary judgment when inmate failed to submit verifying medical evidence that prison officials' delay had an adverse effect). And without expert testimony, no jury could conclude that Kosinski or Willey made decisions that do not meet a physician's standard of care or caused Redmond's condition to worsen. *Id.*

Instead, Redmond claims that all three medical providers delayed his treatment in some way and that the detrimental effect is as "obvious to the layperson" as it was in *Moore v. Jackson*, 123 F.3d 1082, 1086 (8th Cir. 1997) (citation omitted). In *Jackson*, we said that the effect of an eight-month delay in adequate treatment for a toothache was obvious, even to non-professionals, and showed that "[s]omething appear[ed] wrong with the dental care system." *Id.* The plaintiff's claims there survived because the court inferred, as it must on summary judgment, that the dentist and nurse received the inmate's complaints as alleged and did not take any action to treat his abscess. *Id.* at 1086–87.

Redmond does not allege the defendants delayed all treatment, but that they failed to provide the proper treatment at the proper time to prevent his wound from

becoming infected and his condition from worsening.[2]  When an inmate claims that a delay in medical care violates the Eighth Amendment, "the objective seriousness of the deprivation should also be measured 'by reference to the *effect* of delay in treatment.'"  *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005) (cleaned up) (citation omitted).  "A prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials ignored an acute or escalating situation or that these delays adversely affected his prognosis."  *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (cleaned up) (citation omitted).  And if the treatment is for a sophisticated medical condition, "testimony is required to show proof of causation."  *Alberson v. Norris*, 458 F.3d 762, 765–66 (8th Cir. 2006).

Redmond's records reflect a complex medical situation with an unfortunate result.  Diabetes, hepatitis, and infected wounds are treated with a variety of medications and procedures.  Specially trained providers may make different decisions on treatment and patients may have varying outcomes.  The sophisticated medical question here is not within the common understanding of the jury or the court—and it is not "so obvious that a layperson would easily recognize" whether the medical provider's alleged actions or inactions were grossly incompetent or inadequate.  *See Jones*, 512 F.3d at 482.

---

[2]For the first time on appeal, Redmond claims that Hacker "inexplicably failed to follow" UIHC's prescription for the antibiotic Cephalexin and instead switched him to the antibiotic Amoxicillin.  He also now alleges that Kosinski withheld the antibiotic Ciprofloxacin for over two weeks after it was ordered by the UIHC physician.  We ordinarily do not consider arguments raised for the first time on appeal. *Foster v. Mo. Dep't of Health & Senior Servs.*, 736 F.3d 759, 762 (8th Cir. 2013).  And even had Redmond raised the argument below, the record does not support him.  The record shows that physician Steven Cook ordered the Amoxicillin on March 31, *see* D. Ct. Dkt. 44 at 33, and Redmond admitted that Ciprofloxacin was administered from April 10 to 17, *see* Response to Defendants' Undisputed Material Facts, D. Ct. Dkt. 53-1 at 4–5, ¶10.

Redmond's unsupported medical conclusions cannot create a question of fact about whether the defendants' medical decisions were reasonable, negligent, grossly negligent, or so ineffective as to be criminally reckless, rising to the level of deliberate indifference. Without medical evidence, no reasonable jury could conclude that the providers were deliberately indifferent to his serious medical need. *Id.*

### III.

Redmond fails to provide evidence from which a trier of fact could draw an inference that Hacker, Kosinski, or Willey provided care that was "grossly inappropriate" or "intentional maltreatment," *Dulany*, 132 F.3d at 1241, and so we affirm the district court's grant of summary judgment to Hacker, Kosinski, and Willey.

_____