# United States Court of Appeals
### For the Eighth Circuit

_____

No. 12-1276

_____

Toby J. Sutton

*Plaintiff - Appellee*

v.

Patricia Bailey, Individually & in Official Capacity as Vice-Chancellor of
Academic & Student Affairs; Kellie Thomas, Individually & in Official Capacity
as Director of Instruction

*Defendants - Appellants*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Jonesboro

_____

Submitted: October 3, 2012
Filed: December 3, 2012

_____

Before RILEY, Chief Judge, LOKEN and BENTON, Circuit Judges.

_____

LOKEN, Circuit Judge.

Toby J. Sutton commenced this lawsuit after he was terminated as a Funeral
Science Director at Arkansas State University -- Mountain Home. He asserted
procedural due process claims under 42 U.S.C. § 1983 against Vice-Chancellor
Patricia Bailey and Director-of-Instruction Kellie Thomas in their official and

individual capacities, alleging they provided constitutionally inadequate pre-termination process and seeking damages and injunctive relief. Bailey and Thomas (collectively "Appellants") appeal the district court's denial of qualified immunity on these individual-capacity damage claims.[1] Reviewing the denial of qualified immunity *de novo* and the record in the light most favorable to Sutton, we conclude that reasonable school officials would not have known that Appellants' conduct violated Sutton's clearly established due-process rights and therefore reverse. See Monroe v. Ark. State Univ., 495 F.3d 591, 594 (8th Cir. 2007) (standard of review).

## I.

In May 2010, Sutton entered into a nine-month contract with the University to serve as a Funeral Science Director for the 2010-11 academic year. The contract provided that Sutton could be terminated at any time "for adequate cause." On November 2, 2010, Sutton received an email from Bailey's assistant asking him to attend a meeting the following day but not disclosing the subject of the meeting. The next day, Sutton met with Appellants and a Human Resources Department representative. Bailey presented Sutton with a statement that had been posted on his Facebook page in June 2010: "Toby Sutton hopes this teaching gig works out. Guess I shouldn't have cheated through mortuary school and faked people out. Crap!"

After reading the statement aloud, Bailey told Sutton he was fired. Sutton asked if it mattered that the statement was a joke. Bailey said, "No." Sutton then asked if it mattered that he had posted the statement before he began teaching. Bailey replied, "Not really." Bailey then handed Sutton an Employee Counseling Statement,

---

[1]Sutton also asserted state-law breach of contract and whistleblower claims against the University and Appellants. The district court dismissed those claims. The court also denied Appellants summary judgment on the official-capacity § 1983 claims for injunctive relief. These issues are not raised in this interlocutory appeal.

which she had already signed. The one-page form stated that Sutton was being dismissed for a June 2010 Incident of "Academic Fraud and unprofessional conduct." Next to a heading titled "Supervisor Statement," the form stated: "Mr. Sutton posted material on Facebook indicating he had 'cheated' his way through mortuary school. There are multiple other class related issues." Bailey told Sutton he had "the opportunity to make a statement" before signing the form. Sutton declined and signed the form without further comment. Sutton's employment benefits did not end until after that meeting.

The University has adopted a six-step Faculty Grievance Procedure, which provides that, upon receiving a grievance, the Faculty Grievance Committee must "1) study the written complaint, 2) take testimonies from concerned parties, 3) examine relevant files and/or documents, and 4) either recommend that the grievance be dismissed or recommend a remedy." A party dissatisfied with the Committee's decision may appeal to the Chancellor of the University. Sutton knew this grievance procedure existed, but chose not to use it, opting instead to file this lawsuit.[2]

## II.

When state law grants a public employee a property right in continued employment, as in this case, "he may not be discharged from his job without due process." Riggins v. Bd. of Regents of the Univ. of Neb., 790 F.2d 707, 710 (8th Cir.

---

[2]Sutton's Complaint alleged that, shortly after commencing employment, he became concerned that prior lapses in compliance could cause the Funeral Science program to lose its accreditation with the American Board of Funeral Science Education. He was terminated the day after being told that records he sought from Appellants could not be found. These allegations were the basis of his state-law whistleblower claims.

1986).[3] The Supreme Court held in <u>Cleveland Board of Education v. Loudermill</u>, 470 U.S. 532, 545-46 (1985), that the Due Process Clause requires a pre-termination hearing in some form, but if a post-termination hearing is also available, the pre-termination proceedings "need not be elaborate. . . . The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." The primary purpose of this type of pre-termination hearing is not to "definitively resolve the propriety of the discharge," but to serve as "an initial check against mistaken decisions . . . ." <u>Id.</u> at 545. Following <u>Loudermill</u>, we have consistently held that, where post-termination proceedings are available, "informal meetings with supervisors" may be sufficient pre-termination hearings. <u>Schleck v. Ramsey Cnty.</u>, 939 F.2d 638, 641 (8th Cir. 1991), quoting <u>Riggins</u>, 790 F.2d at 711; <u>accord</u> <u>Krentz v. Robertson Fire Prot. Dist.</u>, 228 F.3d 897, 902-03 (8th Cir. 2000).

Appellants are entitled to qualified immunity unless their conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). For these purposes, a right is "clearly established" if the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987). Qualified immunity "depends upon the objective reasonableness of [the alleged misconduct] as measured by reference to clearly established law." <u>Schleck</u>, 939 F.2d at 641(quotations omitted). We have jurisdiction to consider interlocutory appeals of the denial of qualified immunity "when they resolve a dispute concerning an abstract issue of law relating to qualified immunity -- typically, the issue whether the federal right

---

[3]Under Arkansas law, a public employee who may only be terminated for cause has a property interest protected by the Due Process Clause. <u>See</u> <u>Griffin v. Erickson</u>, 642 S.W.2d 308, 310 (Ark. 1982).

allegedly infringed was 'clearly established.'" Behrens v. Pelletier, 516 U.S. 299, 313 (1996) (citations and quotations omitted).

Sutton claims that Appellants violated his right to procedural due process by failing to provide an adequate pre-termination hearing. The qualified immunity question, then, is "whether the 'contours' of the pretermination procedural due process rights announced in [Loudermill], and applied in lower court cases interpreting that decision, were 'sufficiently clear' that a reasonable official would understand that terminating [Sutton] without a more elaborate hearing than that which he received violated those procedural rights." Powell v. Mikulecky, 891 F.2d 1454, 1457 (10th Cir. 1989). The district court concluded that it "cannot conclude as a matter of law that Sutton was provided with sufficient pre-termination process" *because* the University's post-termination grievance procedure *may* not be "constitutionally adequate." Appellants are therefore not entitled to qualified immunity, the court concluded, because "supervising faculty members at a state university should be familiar with the due process requirements stated in" our post-Loudermill decisions. We disagree with this cryptic qualified immunity analysis.

Sutton's informal November 2010 meeting with Appellants included the essential elements of the minimal pre-termination hearing required by Loudermill and our later cases. Appellants provided Sutton oral notice of the charge and the employer's evidence against him when Bailey read his June 2010 Facebook statement aloud. Sutton admitted to posting the statement, obviating the need for Appellants to provide further evidence that he was guilty of the alleged misconduct. Sutton was afforded an opportunity to present his side of the story and informed Appellants that the statement was a joke and that he posted it before he began teaching. When given the Employee Counseling Statement, he declined to comment further.

On appeal, Sutton argues he received inadequate notice of the charges because he was not told the meeting would concern his termination. We have rejected the

contention that there "must be a delay between the 'notice' and the 'opportunity to respond' accorded to a public employee." Coleman v. Reed, 147 F.3d 751, 754 (8th Cir. 1998). The informal meeting in this case was similar to the meeting conducted in Powell, 891 F.2d at 1459-60, cited approvingly in Coleman and in Schleck. Sutton asserts that it was unreasonable for Appellants "to actually believe that Sutton cheated his way through mortuary school." But that is an attack on the merits of the decision to terminate, not on the adequacy of the pre-termination procedure.

Sutton further argues that Appellants failed to explain at the meeting, and give him an opportunity to respond, to the "other class related issues" referred to on the Employee Counseling Statement. But the Statement clearly stated the "Incident" in question occurred in June 2010, before Sutton began teaching, a clear reference to the Facebook posting. Sutton was given the Statement before the meeting ended and declined to make a further statement before he signed the form. We have repeatedly observed that an employer need not disclose "all the details of the charges against the employee." Larson v. City of Fergus Falls, 229 F.3d 692, 697 (8th Cir. 2000), citing Schleck, 939 F.2d at 642. Therefore, reasonable officials would not have understood that they must explain subsidiary employment issues that were vaguely alluded to before terminating Sutton, when he chose not to pursue those issues.

Sutton also complains that the pre-termination meeting was not "meaningful" because the decision to terminate him was made before the meeting took place. "Due process . . . does not require *predecision* hearings. It only requires an opportunity to be heard prior to the termination of benefits." Jackson v. St. Joseph State Hosp., 840 F.2d 1387, 1391 (8th Cir.) (emphasis added), cert. denied, 488 U.S. 892 (1988). Here, the pre-termination meeting was timely, and it served as the initial check against mistaken decisions that Loudermill requires. Even if Appellants decided to terminate Sutton before the meeting occurred, they might well have reconsidered had he persuasively denied responsibility for the Facebook posting.

Sutton further suggests he was denied pre-termination due process because Appellants were biased decisionmakers due to his discovery of deficiencies in the Funeral Science program. An impartial decisionmaker is not required at the pre-termination stage so long as the employee has access to post-termination proceedings before an impartial adjudicator. See Locurto v. Safir, 264 F.3d 154, 174 (2d Cir. 2001) (collecting cases); Duchesne v. Williams, 849 F.2d 1004, 1008 (6th Cir. 1988) (en banc) (post-termination proceedings "serve to ferret out bias, pretext, deception and corruption by the employer in discharging the employee"). Appellants' participation in the pre-termination meeting did not violate Sutton's clearly established due-process rights, as he had the opportunity to contest the termination, and level his charges of bias and pretext, by invoking the University's internal post-termination grievance procedures.

Finally, Sutton contends that he received inadequate *pre-termination* process because the University's *post-termination* grievance procedures were constitutionally inadequate. Sutton waived the right to complain about the adequacy of the post-termination procedures by not invoking those procedures. See, e.g., Krentz, 228 F.3d at 904; Riggins, 790 F.2d at 711-12; Demming v. Hous. & Redev. Auth., 66 F.3d 950, 953-54 (8th Cir. 1995). It is true that "failure to exhaust postdeprivation remedies does not affect [an employee's] entitlement to predeprivation process." Christiansen v. W. Branch Cmty. Sch. Dist., 674 F.3d 927, 936 (8th Cir. 2012), quoting Keating v. Neb. Pub. Power Dist., 562 F.3d 923, 929 (8th Cir. 2009). It is also true that "the existence of post-termination procedures is relevant to the necessary scope of pretermination procedures." Loudermill, 470 U.S. at 547 n.12.

But the issue here is qualified immunity from Sutton's claims of inadequate pre-termination process. Appellants were aware of the University's grievance procedures, but they were not responsible for their adequacy. Appellants provided Sutton the essential elements of the pre-termination hearing Loudermill and our cases applying Loudermill required. It was reasonable for them to assume that Sutton, if

he wished to contest the termination, would file a grievance and that the grievance procedures would comport with the minimum post-termination procedures that the Due Process Clause mandates. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." Messerschmidt v. Millender, 132 S. Ct. 1235, 1244-45 (2012) (internal quotations omitted). Whether the University's post-termination process was so inadequate that due process required more than an informal pre-termination hearing is an uncertain issue that turns on "a balancing of the competing interests at stake" in a particular case. Loudermill, 470 U.S. at 542. Because the constitutional adequacy of post-termination procedures therefore cannot be assessed in a vacuum, the *possible* inadequacy of the post-termination procedures Sutton failed to invoke cannot, as a matter of law, be a proper basis for denying qualified immunity from individual-capacity damage claims based entirely on the alleged inadequacy of the pre-termination process the decision-makers provided.

For the forgoing reasons, we conclude that Patricia Bailey and Kellie Thomas are entitled to the defense of qualified immunity from all § 1983 individual-capacity damage claims asserted in Toby Sutton's Complaint. The district court's order dated January 13, 2012, is reversed in part, and the case is remanded for further proceedings not inconsistent with this opinion.

_____