# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-4162
_____

Morgan Hansen

*Plaintiff - Appellee*

v.

Thomas Black

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - St. Joseph

_____

Submitted: April 6, 2017
Filed: September 18, 2017

_____

Before WOLLMAN and LOKEN, Circuit Judges, and NELSON, District Judge.[1]

_____

LOKEN, Circuit Judge.

Morgan Hansen's German Shepherd, Conan, escaped from her father's back yard and ran down highway I-29 near St. Joseph, Missouri, obstructing traffic. Missouri Highway Patrol trooper Thomas Black unsuccessfully attempted to remove

_____

[1]The Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota, sitting by designation.

the dog from the roadway, then shot and killed him. Hansen filed this 42 U.S.C. § 1983 damage action against Black in his individual capacity, arguing Black unreasonably seized her dog in violation of the Fourth Amendment. Black filed a motion for summary judgment based on qualified immunity, which the district court denied. Black appeals this interlocutory order. Viewing the facts most favorably to the non-movant and reviewing the denial of qualified immunity *de novo*, we reverse. De La Rosa v. White, 852 F.3d 740, 743 (8th Cir. 2017) (standard of review).

## I.

On Sunday morning, May 20, 2012, Trooper Black was dispatched to respond to calls regarding a dog on or near the I-29 roadway near busy Frederick Avenue exit ramps into St. Joseph, where the speed limit was 65 miles per hour. After accessing the southbound lanes, Trooper Black saw a collared, unleashed German Shepherd -- Conan -- running loose in the roadway. Trooper Black did not see anyone attempting to catch the dog, and southbound vehicles were swerving onto the right shoulder or rapidly changing lanes to avoid hitting the dog. To reduce the obvious traffic hazard, Trooper Black positioned his patrol car across the center stripe, shutting down both southbound lanes, while he attempted to capture the dog.

Initially, Black exited his patrol car and tried calling and running at the dog, but it ran away, down the center stripe of the southbound lanes. Black re-entered his patrol car and drove after the dog, then positioned the car to again block traffic, got out, and tried to capture the dog by "yelling, shouting, [and] running towards [him]." The dog again ran away. When Black activated his patrol car sirens to scare the dog off the road, it looped north and circled his patrol car. Black again got out and tried to scare the dog off the road by shouting and raising his hands. The dog ran away at a "full sprint," heading south on the southbound lanes of the interstate. By this time, Trooper Black could see hundreds of southbound vehicles backed up a quarter mile, which in his experience created a serious risk of "secondary" crashes.

Trooper Black reentered his patrol car and drove as close to the running dog as he could. He exited and fired a shot at the dog from fifty to seventy feet away. The dog fell down. As Trooper Black approached from the north, the dog continued south down the center of the southbound lanes, using his front paws because his back legs were injured. Trooper Black shot the dog a second time in the torso or chest. The dog dragged itself onto the grass median between the southbound and northbound lanes. Observing the dog was now in pain and gravely wounded, Black fired two more shots "to humanely kill the dog."[2]

## II.

In this § 1983 damage action, Hansen alleges that Trooper Black's "shooting and killing Plaintiff's dog" violated her rights under the Fourth Amendment. Trooper Black appeals the district court's denial of his motion for summary judgment, arguing he is entitled to qualified immunity from Hansen's damage claim. Qualified immunity shields public officials such as Trooper Black from liability and the burdens of standing trial if their conduct did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." White v. Pauly, 137 S. Ct. 548, 551 (2017) (quotation omitted). This shields all but the "plainly incompetent" -- those whose conduct violated legal norms that existing precedent placed "beyond debate" at the time of the alleged misconduct. Ashcroft v.

---

[2]Trooper Black's deposition and affidavit are the only record evidence of his attempted capture and shooting of the dog. Hansen provided no contrary evidence but denied Trooper Black's testimony for summary judgment purposes, alleging Black's credibility is in issue. "Once the moving party has properly supported its motion for summary judgment, the non-moving party . . . must come forward with specific facts showing that there is a genuine issue for trial." Conseco Life Ins. Co. v. Williams, 620 F.3d 902, 910 (8th Cir. 2010) (quotation omitted). Like the district court we conclude no material fact dispute precludes our prompt determination of the qualified immunity issue, as the Supreme Court has repeatedly directed. See Pearson v. Callahan, 555 U.S. 223, 232 (2009).

al-Kidd, 563 U.S. 731, 741, 744 (2011) (quotation omitted). To defeat summary judgment based on qualified immunity, Hansen must point to facts showing *both* that she suffered a violation of a constitutional or statutory right *and* that the right was clearly established at the time of Black's alleged violation.

The Fourth Amendment protects "persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It "protects property a well as privacy." Soldal v. Cook Cty., 506 U.S. 56, 62 (1992). "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." United States v. Jacobsen, 466 U.S. 109, 113 (1984). This court and other circuits that have considered the issue agree that privately-owned dogs "should be considered effects within the meaning of the Fourth Amendment." Altman v. City of High Point, 330 F.3d 194, 202 (4th Cir. 2003); see Andrews v. City of W. Branch, 454 F.3d 914, 918 (8th Cir. 2006); Brown v. Muhlenberg Twp., 269 F.3d 205, 210-11 (3d Cir. 2001); Fuller v. Vines, 36 F.3d 65, 68 (9th Cir. 1994), cert. denied, 514 U.S. 1017 (1995), *overruled on other grounds by* Robinson v. Solano Cty., 278 F.3d 1007, 1013 (9th Cir. 2002); Lesher v. Reed, 12 F.3d 148, 150 (8th Cir. 1994).

**A.** Hansen argues that Black committed an unconstitutional seizure when he shot and killed her dog. But that over-simplifies the Fourth Amendment issue. Trooper Black unquestionably had the authority, indeed a public duty, to seize a large, unleashed dog running unrestrained down a busy high-speed interstate highway, causing vehicles to swerve, change lanes, and seek safety on the shoulder. Thus, it is not the seizure that is in question, it is the degree of force Black employed to accomplish a necessary seizure. "Determining whether the force used to effect a particular seizure is 'reasonable' requires balancing of the individual's Fourth Amendment interests against the relevant government interests." Cty. of Los Angeles v. Mendez, 137 S. Ct. 1539, 1546 (2017) (quotation omitted). The analysis "turns on the facts and circumstances of each particular case." Kingsley v. Hendrickson, 135

S. Ct. 2466, 2473 (2015), quoting Graham v. Connor, 490 U.S. 386, 396 (1989); see Wertish v. Krueger, 433 F.3d 1062, 1066 (8th Cir. 2006).

The district court recognized that this Fourth Amendment issue required an excessive force analysis:

> A jury could find that Trooper Black's seizure was not objectively reasonable under the circumstances.[3] Although the dog may have posed a risk to motorists while it was running on the Interstate, that risk ended when Trooper Black shot the dog the first time. . . . The first shot caused the dog to drop, and by Trooper Black's own testimony, the dog was only able to drag itself on its front paws. At this point, Trooper Black could have picked up the dog. Instead, Trooper Black walked towards the dog and then shot it a second time. After the first shot . . . the dog had been stopped, the Interstate could be opened, and the risk to the public was over. Once the justification for a seizure ends, it is no longer reasonable for a seizure to occur.

However, although the court properly framed the Fourth Amendment issue, in our view it failed to "make this determination from the perspective of a reasonable officer on the scene." Kingsley, 135 S. Ct. at 2473. Rather, when it appeared to the court "in the calm aftermath, that [Trooper Black] could have taken a different course" -- carrying the dog off the roadway -- it improperly held Black to that "demanding standard," rather than limit its inquiry to the objective reasonableness of Black's conduct. Aipperspach v. McInerney, 766 F.3d 803, 806 (8th Cir. 2014) (quotations omitted), cert. denied, 135 S. Ct. 1415 (2015).

---

[3]This statement reflected a common legal error. "In determining whether a Fourth Amendment violation occurred we draw all reasonable factual inferences in favor of the jury verdict, but . . . we do not defer to the jury's legal conclusion that those facts violate the Constitution." Muehler v. Mena, 544 U.S. 93, 98 n.1 (2005).

A dog owner's protected property interest wanes if her pet escapes. "[W]hile we do not denigrate the possessory interest a dog owner has in [her] pet, we do conclude that dog owners forfeit many of these possessory interests when they allow their dogs to run at large, unleashed, uncontrolled, and unsupervised, for at that point the dog ceases to become simply a personal effect and takes on the nature of a public nuisance." Altman, 330 F.3d at 205-06. Here, responding to 911 calls, Trooper Black encountered a large dog running free on a high speed interstate, causing traffic to swerve between lanes and drive onto the shoulder. Black made multiple attempts to capture the dog without using force. But his efforts were unavailing and caused a dangerous quarter-mile traffic back-up. At this point, we agree with the district court that Black's decision to use force to clear the highway of this traffic hazard by firing the first shot was objectively reasonable. The first shot wounded the dog, but it remained in the southbound lanes, struggling to evade Black and continuing to obstruct the highway. Trooper Black decided that traffic safety, his first priority, required him to clear an interstate highway rather than continuing to hold traffic while waiting for additional help. He did not have a taser, catch, or snare pole, so he shot the dog a second time. The district court, employing hindsight, reasoned that Black could simply have carried Conan off the roadway. But we are not prepared to say that, in these circumstances, the Fourth Amendment required an officer to approach and attempt to carry a large wounded animal that his extensive efforts had failed to control. Moreover, the district court failed to explain how Black would have been able to safely reopen the interstate after leaving this wounded animal on the median.

None of the cases on which Hansen relies involved an unleashed, unsupervised dogs that was risking public safety on a busy interstate highway and would not respond to numerous attempts at a safe, harmless seizure. In Andrews, 454 F.3d 914, an officer looking for a large black dog loose in a residential neighborhood shot another dog that was harmlessly urinating in a fenced backyard, with its owner standing a few feet away. In Brown, 269 F.3d at 209, 211-212, an officer repeatedly shot a pet "without any provocation and with knowledge that it belonged to the family

-6-

who lived in the adjacent house and was available to take custody." When a dog is "at large, uncontrolled and with no owner looking on [is] distinguishable from the Third Circuit's decision in Brown." Altman, 330 F.3d at 207.

An officer's use of deadly force is always tragic, but the actions of Trooper Black were objectively reasonable under the circumstances, and he is therefore entitled to qualified immunity.

**B.** Even assuming a constitutional violation, Trooper Black is entitled to qualified immunity because his conduct did not violate a clearly established Fourth Amendment right. To avoid qualified immunity, Hansen must show that existing precedent placed Trooper Black's conduct "beyond debate." al-Kidd, 563 U.S. at 741; see White, 137 S. Ct. at 552. Hansen has not cited, and we have not found, any case concluding that an officer violated the Fourth Amendment when he shot and killed an unrestrained, unsupervised dog creating a serious risk to public safety and avoiding numerous attempts to control him without force. In Andrews, 454 F.3d 914, and in Lesher, 12 F.3d 148, the dogs were under their owners' control when seized.

The district court reasoned, citing Andrews, that it was "clearly established that pets who do not pose an imminent danger cannot be shot, regardless of the specific facts that demonstrate the lack of danger," and Trooper Black's "first shot made it possible to remove the dog from Interstate through means that did not require it to be shot again." We cannot agree it was clear to a reasonable officer that the wounded dog presented no imminent danger to the motoring public when it remained in the southbound lanes, struggling to get away, while a traffic back-up created a constant risk of secondary crashes. Moreover, whether Black could have safely carried the dog off the road, and then moved his patrol car to lift the roadblock with the wounded dog still on the interstate median, is speculation that Fourth Amendment excessive force precedents do not require. Trooper Black is entitled to qualified immunity

because existing precedent did not place "beyond debate" that his conduct contravened Hansen's clearly established Fourth Amendment rights.

The Order of the district court dated October 27, 2016 denying Trooper Thomas Black's motion for summary judgment is reversed.

_____