# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-3314
_____

Darryl Lunon

*Plaintiff - Appellee*

v.

Kathy Botsford, in her individual and official capacities as
Director of Pulaski County Sanitation and Animal Services, et al.

*Defendants - Appellants*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: September 24, 2019
Filed: December 27, 2019

_____

Before LOKEN, COLLOTON, and KOBES, Circuit Judges.

_____

LOKEN, Circuit Judge.

Abandoning state law damage claims barred by statutory immunity, Darryl Lunon filed an amended complaint seeking damages under 42 U.S.C. § 1983. The individual defendants, sued in their individual and official capacities, are Animal Control Officer Jonathan Dupree of the Pulaski County Sanitation and Animal Services ("PCAS"), PCAS Director Kathy Botsford, and City of North Little Rock

Animal Control Director David Miles. Also named as defendants are Pulaski County, PCAS, the City of North Little Rock, and North Little Rock Animal Control.

Lunon alleges that each individual defendant violated his constitutional right to procedural due process when the North Little Rock Animal Shelter, after a five-day holding period, put a stray dog up for adoption and spayed the dog before delivering it to the adopting family. Unknown to defendants, the stray dog was Lunon's young German Shepherd, Bibi Von Sonnenberg ("Bibi"), which boasts world champion lineage and had escaped from Lunon's back yard two weeks earlier. Lunon argues he had a procedural due process right to notice and an opportunity to be heard before Bibi was put up for adoption and her substantial value as a breeding dog destroyed by spaying. He further alleges that Pulaski County and North Little Rock are liable for failing to train their employees to comply with procedures that required animal control officers to scan Bibi for an embedded microchip that would have disclosed Lunon as her owner.

Defendants removed the case to federal court and moved for summary judgment, which the district court denied. The individual defendants "in their individual capacities" then filed this interlocutory appeal, arguing the district court erred in denying their motion for summary judgment because they are entitled to qualified immunity. Reviewing the denial of qualified immunity *de novo*, we agree and therefore reverse. Sutton v. Bailey, 702 F.3d 444, 446 (8th Cir. 2012) (standard of review).

## I. Background

After Bibi escaped from Lunon's yard on February 14, 2017, Will Quinn discovered a dog he did not recognize in his nearby garage and called the Pulaski County Sheriff's Office, which dispatched a deputy sheriff and contacted PCAS.

PCAS dispatched Dupree, the only animal control officer on duty that day because a colleague had called in sick. A Pulaski County ordinance authorizes animal control officers, "on complaint by a resident," to pick up and impound in an animal shelter a "stray" domestic animal that is off the owner's premises and running at large. Stray is defined as lacking a collar with the owner's name, address, and phone number. At Quinn's garage, Bibi did not resist Dupree, who saw that she had a collar but no metal tag identifying her owner.[1] With the dog's owner unknown, Dupree took Bibi to the North Little Rock Animal Shelter. The Shelter is an agency of the City, not Pulaski County, but has a contract to accept stray dogs from Pulaski County animal control officers for impoundment.

Lunon's procedural due process claim is based in large part on Dupree's failure to comply with Section III of PCAS Procedure P14-06, which provides:

> It shall be the responsibility of the Animal Service Officer who brings an animal into the North Little Rock Animal Shelter to make a kennel card for the animal. It shall also be the responsibility of this person to scan the animal for an implanted microchip and note it on the kennel card. All animals should be scanned [unless dangerous]. The Microchip Scanner is located above the work table in the kennel and must be returned there after each use!

When Dupree delivered Bibi to the Animal Shelter, he did not scan her for a microchip. A scan would have revealed a permanent identifying number that could have been searched through the American Kennel Club to identify Lunon as her owner. Dupree completed the required kennel card, but he left blank the space for microchip scanning and incorrectly listed Bibi as a male dog.

---

[1]Lunon testified that Bibi had a tag (as a Pulaski County ordinance required). In reviewing the denial of summary judgment, we accept Lunon's testimony as true, but it is undisputed that Dupree did not see a tag.

Animal Shelter staff impounded Bibi without scanning her for a microchip. The Shelter impounded Bibi for five days, consistent with Section 3.1.7(B) of the North Little Rock Municipal Code:

> If the owner of an impounded dog fails or refuses to reclaim such dog within five days after impoundment, the city animal shelter is hereby authorized to release such dog to a person other than the owner upon the payment of required fees or to humanely euthanize the dog.

Following the five-day hold, the Shelter put Bibi up for adoption and signed an adoption contract with Christopher Vance on February 24. Section 3.1.5 of the North Little Rock Municipal Code prohibited the Shelter from "releas[ing] to a new owner any dog . . . which has not been sterilized." Accordingly, the Shelter had Bibi sterilized on February 28 before delivering her to Vance.

After Bibi escaped, Lunon testified that he searched his neighborhood, posted flyers, and requested help from friends on social media. Three days after the escape, he called PCAS and North Little Rock and was told they did not have a German Shepherd. A week after the escape, Quinn told Lunon "the police" had picked up his dog. Lunon again called PCAS and North Little Rock and was again told they did not have a German Shepherd. On March 18, Quinn called and told Lunon the Pulaski County Sheriff had responded to Quinn's complaint and picked up the dog. Lunon contacted the Sheriff's Office and obtained a copy of a report on Quinn's complaint stating that "animal control dupree was contacted." Lunon then met separately with PCAS and Animal Shelter officials including Dupree. They were able to reconstruct Bibi's capture, impoundment, adoption, and spaying. Lunon recovered ownership of Bibi from Vance in a state court replevin action. This § 1983 damage action followed.

-4-

## II. Discussion

Qualified immunity shields public officials from liability for civil damages if their conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To defeat summary judgment based on qualified immunity, Lunon must show that the individual defendants acting in their individual capacities violated a constitutional or statutory right that was clearly established at the time of the violation. Hansen v. Black, 872 F.3d 554, 557-58 (8th Cir. 2017), cert. denied, 138 S. Ct. 2010 (2018). The district court and Lunon assumed that defendants are collectively responsible for any procedural due process violation. This is wrong. We require "an individualized analysis of each officer's alleged conduct to determine whether the factual allegations . . . were sufficient to overcome qualified immunity." Roberts v. City of Omaha, 723 F.3d 966, 974 (8th Cir. 2013); see Manning v. Cotton, 862 F.3d 663, 668 (8th Cir. 2017).

Lunon argues that defendants denied him his Fourteenth Amendment right to procedural due process when they adopted out and spayed his dog Bibi without providing pre-deprivation notice and an opportunity to be heard. The Due Process Clause constrains "governmental decisions which deprive individuals of 'liberty' or 'property' interests." Mathews v. Eldridge, 424 U.S. 319, 332 (1976). Property interests "are created *and their dimensions are defined* by existing rules or understandings that stem from an independent source such as state law -- rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Board of Regents v. Roth, 408 U.S. 564, 577 (1972) (emphasis added). If Lunon establishes a protected property interest, "the question remains what process is due," which is a question of federal constitutional law. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985) (quotation omitted).

In this case, the district court failed to devote sufficient attention to whether Lunon had a protected procedural due process property interest and if so, the nature and extent of that interest. The court reasoned: "Animal owners have a substantial interest in maintaining their [ownership] rights in animals seized by the state, whether those animals are pets who are maintained for companionship or are animals owned for commercial purposes," citing Porter v. DiBlasio, 93 F.3d 301, 306 (7th Cir. 1996). But Porter was a suit against officers who seized neglected animals and transferred ownership without notice to their *known* owner.[2]

In this case, Lunon asserts the same procedural due process rights against officers who picked up a stray domestic animal. Lunon's claim is that defendants had an affirmative constitutional duty to learn that he was Bibi's owner, a duty they breached by failing to scan Bibi's microchip. The Supreme Court declared more than a century ago: "Even if it were assumed that dogs are property in the fullest sense of the word, they would still be subject to the police power of the state, and might be destroyed or otherwise dealt with, as in the judgment of the legislature is necessary for the protection of its citizens." Sentell v. New Orleans & C.R. Co., 166 U.S. 698, 704 (1897). And in Nicchia v. People of State of New York, 254 U.S. 228, 230-31 (1920), the Court declared that "property in dogs . . . may be subjected to peculiar and drastic police regulations by the state without depriving their owners of any federal right." These precedents, not since questioned, required the district court to take a close look at the Arkansas law relating to stray animals.

---

[2]Other animal seizure cases cited by Lunon are distinguishable for the same reason. See DiCesare v. Stuart, 12 F.3d 973, 978 (10th Cir. 1993); Humane Soc'y of Marshall Cty. v. Adams, 439 So.2d 150, 153 (Ala. 1983); Anderson v. George, 233 S.E.2d 407, 408 (W. Va. 1977).

We conclude that longstanding Arkansas law is highly relevant, indeed arguably controlling on the due process issue in this case. In Howell v. Daughet, the Supreme Court of Arkansas stated, after reviewing cases from other jurisdictions:

> In those cases it was decided that under the police power there can be a summary seizure and sale of trespassing stock *without personal service of notice on the owner, and without any kind of judicial proceedings.* It may be noted . . . that the statute now under consideration provides for a judicial determination of the right under the statute to condemn in a given case, *though it does not provide for the personal service of notice. It is not doubted that the provisions of the statute are valid so far as they relate to the seizure and sale of the property.*

230 S.W. 559, 560 (Ark. 1921) (emphasis added). In the earlier case of Fort Smith v. Dodson, where a property owner challenged the impoundment and sale of swine found running at large, the Court held that five days' notice by posters in public places was "all that is necessary" to satisfy due process. 46 Ark. 296, 300 (1885).

We have held that "[a] dog owner's protected property interest wanes if [his] pet escapes." Hansen, 872 F.3d at 559. As the Fourth Circuit explained, "dog owners forfeit many of th[eir] possessory interests when they allow their dogs to run at large, unleashed, uncontrolled, and unsupervised, for at that point the dog ceases to become simply a personal effect and takes on the nature of a public nuisance." Altman v. City of High Point, N.C., 330 F.3d 194, 206 (4th Cir. 2003). Hansen and Altman involved Fourth Amendment claims that stray dogs were personal property that had been unlawfully seized. This case involves a different type of due process claim -- an asserted procedural due process property interest in pre-deprivation notice and an opportunity to be heard.

-7-

Due process is a flexible concept, requiring only "such procedural protections as the particular situation demands." Mathews, 424 U.S. at 334 (quotation omitted).[3] Lunon concedes that defendants had the right to seize Bibi as a stray dog under the Pulaski County ordinance, and to impound, adopt out, and spay the dog under the City of North Little Rock Municipal Code. But, he argues, defendants violated his procedural due process right to affirmative notice before Bibi was adopted out and spayed. The Supreme Court of Arkansas expressly rejected this claimed procedural right in Howell v. Daughet and Fort Smith v. Dodson. If one views those decisions as defining the dimensions of Lunon's procedural due process property interest under Board of Regents v. Roth, then he has no due process claim. If those decisions are instead viewed as declaring "what process is due," that is a federal question so they are not controlling precedents.[4]

We agree with the Supreme Court of Arkansas that affirmative pre-deprivation notice is not constitutionally required in this situation, when an animal shelter holds a stray dog for more than five days and then adopts out and spays the dog after the owner fails to file a claim. Cf. Mickelson v. Cty. of Ramsey, 823 F.3d 918, 928 (8th Cir. 2016), cert. denied, 137 S. Ct. 1578 (2017) (rejecting the categorical assertion that only pre-deprivation procedures can satisfy due process). Numerous reported decisions involving stray dogs have reached the same conclusion. See Fabrikant, 691

---

[3]"Relevant factors include the affected private interest, the risk of an erroneous deprivation, the probable value of additional procedural safeguards, and the government's interest, including burdens that additional safeguards would entail." Parrish v. Mallinger, 133 F.3d 612, 615 (8th Cir. 1998), citing Mathews, 424 U.S. at 335.

[4]At a minimum, these Supreme Court of Arkansas decisions establish that the procedural due process right alleged by Lunon -- that defendants had an affirmative duty to learn the identity of a stray dog's owner and to provide personal notice before adopting out and spaying the dog -- was not clearly established at the time of the alleged violation. See Fabrikant v. French, 691 F.3d 193, 212-13 (2d Cir. 2012).

F.3d at 212-14; <u>Wall v. City of Brookfield</u>, 406 F.3d 458, 459-60 (7th Cir. 2005); <u>O'Keefe v. Gist</u>, 908 F. Supp.2d 946, 952-53 (C.D. Ill. 2012) (due process does not require municipalities to scan dogs for microchips); <u>Lamare v. N. Country Animal League</u>, 743 A.2d 598, 603 (Vt. 1999) (noting that "longterm confinement is severely detrimental to the health of dogs and a considerable expense to the impounding agency"); <u>Jenkins v. City of Waxahachie</u>, 392 S.W.2d 482, 484 (Tex. Civ. App. 1965); <u>see generally</u> Validity of Statute or Ordinance Providing for Destruction of Dogs, 56 A.L.R.2d 1024 (1957).

In addition, Lunon failed to prove that each *individual* defendant's conduct violated his right to procedural due process. Defendant Dupree picked up Bibi and delivered her to the North Little Rock Animal Shelter. Picking up a stray dog and turning it over to the Animal Shelter for proper impounding did not deprive Lunon of a protected property interest. <u>See</u> <u>Wall</u>, 406 F.3d at 460; <u>Williams v. Soligo</u>, 104 F.3d 1060, 1061 (8th Cir. 1997). Lunon's claim is that the Shelter's adoption and spaying nearly two weeks later deprived him of procedural due process. Dupree did not participate in these actions, but Lunon argues Dupree is nonetheless liable because the deprivation "resulted from [Dupree's] adherence to an established procedure" of ignoring his duty to scan animals he delivered to the Shelter. But there is no *constitutional* duty to scan a stray dog for a microchip, and "[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." <u>Davis v. Scherer</u>, 468 U.S. 183, 194 (1984). Lunon had a claim under state law (barred by statutory immunity) that Dupree's negligent failure to scan Bibi proximately caused Lunon's loss of the dog's substantial economic value, but "the Due Process Clause is simply not implicated by a *negligent* act of an official." <u>Daniels v. Williams</u>, 474 U.S. 327, 328 (1986).

Defendant Botsford was a supervisor at PCAS. Though a supervisor can be individually liable if she participates in a constitutional violation, Lunon offered no evidence that Botsford participated in Bibi's adoption and sterilization or even had knowledge that Dupree did not scan Bibi or accurately complete a kennel card at the Animal Shelter. Rather, Lunon argues that Botsford is personally liable for the alleged procedural due process violation because she "instituted and enforced" an "established pattern of non-compliance" with two Pulaski County directives: (i) a County ordinance providing that "[w]hen [an] animal is impounded, the [PCAS] director or personnel shall give notice to the owner, if known, of at least forty-eight (48) hours,"[5] and (ii) the PCAS policy requiring animal control officers to scan stray dogs delivered to the Animal Shelter for microchips. Botsford is entitled to qualified immunity on this failure-to-train claim because no subordinate violated Lunon's constitutional rights. See Brockinton v. City of Sherwood, Ark., 503 F.3d 667, 673 (8th Cir. 2007).

Defendant Miles was a supervisor at the North Little Rock Animal Shelter. Lunon offered no evidence that Miles personally participated in Bibi's adoption and sterilization. Rather, Lunon argues that Miles "should have known" his subordinates' failure to scan Bibi or investigate the incomplete kennel card would lead to their failure to give Lunon notice and an opportunity to be heard. Like Botsford, Miles cannot be liable in his individual capacity for failure to train his subordinates because Lunon failed to prove those subordinates violated his constitutional rights. Moreover, "should have known" is a claim of negligence that does not implicate the Due Process Clause. Daniels, 474 U.S. at 328. For these reasons, each individual defendant is entitled to qualified immunity as a matter of law because Lunon failed to show that he or she violated Lunon's federal constitutional right to procedural due process.

---

[5]This claim is without merit, first because Bibi was impounded by the City of North Little Rock, not Pulaski County, and second because Bibi's owner was unknown throughout her impoundment.

For the foregoing reasons, the Order of the district court dated October 25, 2018, is reversed insofar as it denied summary judgment to the individual defendants acting in their individual capacities, the only issue before us on appeal. The case is remanded with directions to enter judgment dismissing those claims with prejudice and for further proceedings not inconsistent with this opinion.

COLLOTON, Circuit Judge, concurring in the judgment.

I agree with the court insofar as it holds that the appellants are entitled to qualified immunity because they did not violate any clearly established right of appellee Lunon. There is no comparable decision holding that a party in Lunon's position is entitled to the requested pre-deprivation notice and hearing before officials sterilize a stray dog and place it out for adoption. The closest decisions, *see ante*, at 8-9, rule against the existence of similar rights. Lunon may have a better case than some earlier litigants, but the claimed right is far from obvious. I therefore concur in the judgment reversing the denial of qualified immunity to the individual-capacity defendants.

It is a closer question whether Lunon presented sufficient evidence to support a due process claim against one or more of the defendants under the framework of *Mathews v. Eldridge*, 424 U.S. 319 (1972). Although Lunon's private interest is diminished by the fact that he allowed his dog to run stray, other *Mathews* factors are more favorable to his claim: the evident risk of erroneous deprivation, the seemingly high value of scanning for a microchip to identify an owner who could be notified, and the relatively modest burden that scanning for a microchip with a readily available scanner would entail. *Cf. O'Keefe v. Gist*, 908 F. Supp. 2d 946, 952-53 (C.D. Ill. 2012) (rejecting due process claim where official had no scanner). In my view, the old Arkansas cases, *Howell v. Daughet*, 230 S.W. 559 (Ark. 1921), and *Fort Smith v. Dodson*, 46 Ark. 296 (1885), addressed the federal question of what process is due

-11-

long before the Supreme Court developed its modern due process jurisprudence, so they are both non-binding and outdated. In light of the Supreme Court's direction to "think hard, and then think hard again" before turning small cases into large ones by deciding constitutional questions unnecessarily, *Camreta v. Greene*, 563 U.S. 692, 707 (2011), it is sufficient here to resolve the appeal based on immunity.

_____